NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-1615, 11-2713 and 11-3808
_____

UNITED STATES OF AMERICA

v.

DOMINIQUE JOHNSON,

Appellant, No. 11-1615
_____

UNITED STATES OF AMERICA

v.

AMIN DANCY,

Appellant, No. 11-2713
_____

UNITED STATES OF AMERICA

v.

JERRY TAYLOR,

Appellant, No. 11-3808
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 2-09-cr-00685-002,
2-09-cr-00685-004 and 2-09-cr-00685-001)
District Judge:  Honorable Mary A. McLaughlin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 14, 2012

Before: SCIRICA, FISHER and JORDAN, *Circuit Judges*.

(Filed: March 19, 2013)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Dominique Johnson, Amin Dancy, and Jerry Taylor appeal from their judgments of conviction and sentence. We will resolve these unconsolidated appeals together because they arise from a common factual background and were tried before the same District Court. For the reasons stated below, we will affirm.

I.

Because we write principally for the parties, we will set forth only the factual background and procedural history necessary to our analysis.

These cases arise from a series of five related armed robberies targeting Wachovia Banks in the greater Philadelphia, Pennsylvania area on Fridays in the Summer of 2009.

Based on his involvement in all five robberies, Johnson was convicted of ten counts, including two counts of conspiracy to commit armed bank robbery, 18 U.S.C. § 371; one count of armed bank robbery, § 2113(d); four counts of armed bank robbery and aiding and abetting, §§ 2113(d) and 2; and three counts of using and carrying a

firearm during and in relation to a crime of violence and aiding and abetting, §§ 924(c)(1) and 2. He was sentenced to 835 months' imprisonment.

Dancy was tried jointly with Johnson. For his role in the fifth robbery, he was convicted of one count each of conspiracy to commit armed bank robbery, § 371; armed bank robbery and aiding and abetting, §§ 2113(d) and 2; and using and carrying a firearm during and in relation to a crime of violence and aiding and abetting, §§ 924(c)(1) and 2. He was sentenced to 135 months' imprisonment.

Taylor's trial was severed from that of Johnson and Dancy. As a result of his participation in the second robbery, he was convicted of one count each of conspiracy to commit armed bank robbery, § 371, and armed bank robbery and aiding and abetting, §§ 2113(d) and 2. He was sentenced to 110 months' imprisonment.

## II.

The District Court had jurisdiction over these cases under 18 U.S.C. § 3231, and we have jurisdiction over these appeals under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## III.

We will address Johnson's appeal in Part III.A, Dancy's appeal in Part III.B, and Taylor's appeal in Part III.C.

## A.

We first analyze Johnson's claims that the District Court erred in: (1) denying his motion to suppress evidence seized during the search incident to his unlawful arrest;

3

(2) denying his motion for a judgment of acquittal based on the insufficiency of the evidence supporting certain of his convictions; (3) sentencing him to mandatory minimums on the firearms counts; and (4) sentencing him without grouping the robbery counts. For the denial of Johnson's motion to suppress, we exercise clear error review over the District Court's findings of fact and plenary review over its application of law to facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). We exercise plenary review over the District Court's denial of Johnson's motion for a judgment of acquittal, *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005), and Johnson's constitutional and statutory construction challenges to the District Court's imposition of mandatory minimum sentences, *United States v. Walker*, 473 F.3d 71, 75 (3d Cir. 2007). We review the procedural reasonableness of Johnson's sentence for an abuse of discretion by the District Court. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (*en banc*).

1.

Johnson's first claim is that his cell phone was seized during the search incident to his arrest without probable cause in violation of the Fourth Amendment. After a hearing, the District Court denied Johnson's motion to suppress. We too reject Johnson's argument.

The Fourth Amendment permits a felony arrest without a warrant based on probable cause, *United States v. Watson*, 423 U.S. 411, 417 (1976), which is established when an officer has an objectively reasonable ground for belief in a suspect's guilt based

4

on the totality of the circumstances prior to the arrest, *Maryland v. Pringle*, 540 U.S. 366, 369-71 (2003). An officer may perform a warrantless search incident to a lawful arrest and seize evidence of criminal activity found within the area of the suspect's immediate control. *Chimel v. California*, 395 U.S. 752, 763 (1969). But the exclusionary rule generally requires suppression of evidence seized during a search incident to an unlawful arrest. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

We conclude that officers had probable cause to arrest Johnson for substantially the same reasons cited by the District Court. Contrary to Johnson's contentions, Donald Asper, an investigating officer, testified that before he arrested Johnson, William Childs, a cooperating witness, identified Johnson; that Childs's statement was corroborated; and that Johnson walked quickly away as soon as he saw the arresting officers' multiple, tinted, sport utility vehicles.[1] Because Johnson's cell phone was seized during the search incident to his lawful arrest, we will affirm the District Court's denial of his motion to suppress.[2] *United States v. Robinson*, 414 U.S. 218, 235 (1973).

---

[1] We agree with the Government that Johnson's unfounded, implicit suggestion that he was arrested solely because he is a black male is unfortunate.

[2] The Government argues, in the alternative, that any error was harmless because the remaining evidence overwhelmingly established Johnson's guilt. *See Arizona v. Fulminante*, 499 U.S. 279, 307 (1991) (noting that the "admission of evidence obtained in violation of the Fourth Amendment" is subject to harmless error analysis (citation omitted)). Because we conclude that there was probable cause to arrest Johnson, we need not decide this question.

5

## 2.

Johnson's second claim is that the evidence was insufficient to support his robbery, firearms, and aiding and abetting convictions. Johnson moved for a judgment of acquittal after the Government rested its case and after the jury returned its verdict. The District Court concluded that sufficient evidence supported his convictions, and we are not persuaded by Johnson's protests to the contrary.

We review this claim by examining "the totality of the evidence, both direct and circumstantial," which we interpret "in the light most favorable to the [G]overnment as the verdict winner." *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009) (quotation omitted). We uphold the verdict "if there is substantial evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Id.* (citations omitted). Thus, "[t]he burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *Id.* (quotation omitted).

Johnson argues that the evidence was insufficient because no victim identified him, no physical evidence implicated him, and the cooperating witness testimony was unreliable and uncorroborated. However, Johnson was repeatedly identified and consistently implicated by his co-conspirators. We will not invade the province of the jury by re-weighing the credibility of these witnesses. *Brodie*, 403 F.3d at 133. The uncorroborated testimony of Johnson's co-conspirators could provide a constitutionally sufficient basis for his convictions. *Perez*, 280 F.3d at 344.

6

But the testimony of Johnson's co-conspirators was actually corroborated. For example, Gregory Lawrence, a cooperating witness, implicated Johnson in the first robbery and described his cracked teeth. His testimony was corroborated by Karen Hohmann, a victim of the first robbery, who noticed the perpetrator's crooked teeth. Similarly, Tiniesha Johnson, Johnson's sister and a cooperating witness, testified that she drove Johnson's silver Buick Park Avenue during the fourth robbery, and that a red dye pack from the stolen money exploded in the trunk after that robbery. Officers corroborated her testimony about the car used in the fourth robbery, and physical evidence of stains in the trunk corroborated her testimony about the exploding dye. We conclude that the evidence was sufficient to support Johnson's convictions, and thus we will affirm the District Court's denial of his motion for a judgment of acquittal.

3.

Johnson's third claim is that the District Court erred in sentencing him to a mandatory consecutive term of 84 months on the first firearm count and mandatory consecutive terms of 300 months on each of the second and third firearms counts. He contends that the 18 U.S.C. § 924(c) sentencing scheme violates the Fourteenth Amendment's Due Process Clause by preventing individualized sentencing; violates the Eighth Amendment's prohibition of cruel and unusual punishment by prescribing sentences that are grossly disproportionate to offenses; is ambiguous as applied to second or subsequent convictions charged in the same indictment as a first conviction; and is in

7

conflict with the sentencing factors set forth in 18 U.S.C. § 3553(a). Johnson's arguments are foreclosed by controlling precedent, *Deal v. United States*, 508 U.S. 129 (1993); *Walker*, 473 F.3d 71, and thus the District Court did not err in rejecting them.

4.

Johnson's final claim is that "the District Court erroneously used its discretion in ruling that the [robbery offense] counts should be grouped for purposes of sentencing." Appellant's Br. at 53. However, the District Court adopted the pre-sentence report's classification of the five robbery counts as five separate groups. For this reason, we will interpret – and reject – Johnson's confused argument as a contention that the District Court procedurally erred in failing to group the five robbery counts.

The Sentencing Guidelines provide that counts involve substantially the same harm and must be treated as a single group if they relate to "the same victim and two or more acts . . . constituting part of a common scheme," U.S.S.G. § 3D1.2(b), or if their "offense level is determined largely on the basis of the total amount of harm or loss," § 3D1.2(d). However, for purposes of § 3D1.2(b), the robbery of a bank "on different occasions involves multiple, separate instances of fear and risk of harm." § 3D1.2 cmt. n.4. And, as Johnson concedes, § 3D1.2(d) "expressly excludes U.S.S.G. § 2B3.1 (Robbery Offenses)." Appellant's Br. at 53. Thus, the District Court did not abuse its discretion in refusing to group Johnson's five robbery counts.

B.

We next analyze Dancy's claims that: (1) the evidence was insufficient to support his firearm conviction, and (2) the District Court abused its discretion in overruling his objection to prosecutorial misconduct during the Government's closing. Because Dancy did not move for a judgment of acquittal based on the sufficiency of the evidence, we review his first claim for plain error. *United States v. Gordon*, 290 F.3d 539, 547 (3d Cir. 2002). But because Dancy did lodge a contemporaneous objection to the Government's closing, we review his second claim for an abuse of discretion. *United States v. Lee*, 612 F.3d 170, 193 (3d Cir. 2010).

1.

Dancy first claims that the evidence was insufficient to support his conviction under 18 U.S.C. § 924(c)(1) because the Government failed to prove beyond a reasonable doubt that during the fifth bank robbery he used or carried a firearm, as defined in § 921(a)(3), rather than the BB gun that was used in the first and second robberies. He contends that his conviction should be vacated under *United States v. Lake*, 150 F.3d 269 (3d Cir. 1998), and *United States v. Beverly*, 99 F.3d 570 (3d Cir. 1996), because neither a firearm nor the BB gun was recovered, the eyewitnesses only briefly saw the weapon, and their descriptions of the weapon were consistent with either a firearm or a BB gun.

Dancy mischaracterizes our precedent. A conviction under § 924(c)(1) may be sustained even if a firearm is not recovered, *Lake*, 150 F.3d at 271; in fact, testimony

9

describing a firearm by a single, non-expert eyewitness may be sufficient to sustain the conviction, *Beverly*, 99 F.3d at 572-73. The eyewitness's close proximity to the weapon is as much a factor as the length of time she sees the weapon, *id.*, and her description is sufficient if it is not inconsistent with an actual firearm, *Lake*, 150 F.3d at 271.

The evidence in this case is stronger than that in both *Lake* and *Beverly*, where we sustained convictions under § 924(c)(1). Here, Josephine Mayer, a bank teller, testified that the robber shoved what she believed to be a gun into her side, and Joel Cope, the bank manager, who had experience with firearms as a hunter for more than thirty years, testified that the robber pointed what he had no doubt was a real pistol at his side. Moreover, this eyewitness testimony was corroborated by Christopher Montague, a co-conspirator in the fifth robbery, who testified that Dancy used a .40 caliber handgun, which he knew was real because he saw that it was loaded. Montague's testimony alone provides a second constitutionally sufficient basis for Dancy's conviction. *Perez*, 280 F.3d at 344. Accordingly, we will uphold Dancy's § 924(c)(1) conviction.

2.

Dancy next claims that the District Court abused its discretion in overruling his objection to prosecutorial misconduct during the Government's closing. He contends that he was denied his due process right to a fair trial when the prosecutor bolstered the testimony of cooperating witnesses Lawrence and Montague, who had implicated him in the fifth robbery, by telling the jury: "[Y]ou know that Amin Dancy actually went into

10

the bank and robbed it on July 31st." App. VIII at 138. The District Court effectively sustained Dancy's objection by ordering the prosecutor to move along.

We review the prosecutor's statement "in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Lee*, 612 F.3d at 194 (quotation omitted). A prosecutor enjoys "considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *Id.* (quotation omitted). However, a prosecutor engages in improper vouching when she assures the jury based on her "personal knowledge, experience, or opinions" or "other information not contained in the record" of the credibility of a Government witness. *Id.* at 195 (citation and quotation omitted).

Because the prosecutor's statement was supported by record evidence – such as DNA evidence tying Dancy to the fifth robbery – there was no misconduct. Moreover, even if the statement were improper, the prosecutor ceased vouching after Dancy's objection, and the District Court instructed the jury that closings were not evidence. Thus, it is "highly probable that the error did not contribute to the judgment,"[3] *id.* at 194 (quotation omitted), and Dancy is not entitled to a new trial.

---

[3] Although Dancy argues otherwise, we have held that improper vouching to bolster witness credibility is non-constitutional error. *United States v. Lee*, 612 F.3d 170, 195 n.30 (3d Cir. 2010).

C.

We finally analyze Taylor's claims that the District Court erred in sentencing him by: (1) refusing a downward adjustment based on his mitigating role in calculating his total offense level, and (2) including his two prior marijuana possession offenses in calculating his criminal history category. We review Taylor's sentence to verify that the District Court did not procedurally err by "improperly calculating[] the Guidelines range, . . . selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). Our review is for an abuse of discretion. *Tomko*, 562 F.3d at 567.

1.

Taylor claims that the District Court erred in improperly calculating his total offense level by refusing to grant any downward adjustment based on his mitigating role. Specifically, he contends that its factual finding that he was as culpable as Johnson was clearly erroneous. We disagree.

Under U.S.S.G. § 3B1.2, a sentencing court has broad discretion to decrease a defendant's offense level by four if he was a minimal participant in any criminal activity, by two if he was a minor participant, and by three if he played a middle role. *United States v. Isaza-Zapata*, 148 F.3d 236, 239 (3d Cir. 1998). The applicability of this section is based on the culpability of the defendant relative to his collaborators as revealed by "the nature of the defendant's relationship to the other participants, the

12

importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *Id.* (quotation omitted).

Here, for the first factor, the District Court found that Taylor was not a bystander who "just wander[ed] into th[e] robbery," Appellee's App. at 79; indeed, he agreed to be a lookout for the second robbery. In relation to the second factor, the District Court's finding that Taylor was "integral" to the success of the robbery, *id.* at 51, is confirmed by Lawrence's testimony that he needed a lookout. And under the third factor, the District Court found that Taylor "knew the scope and structure of the enterprise," *id.* at 50, as demonstrated by Lawrence's testimony that he told Taylor the details of his plan.

From this evidence, the District Court found that Taylor was not less culpable than Johnson even though Johnson was the leader of the second robbery. Even if Taylor were less culpable than Johnson, he would not be entitled to "'minor participant' status as a matter of law," *United States v. Brown*, 250 F.3d 811, 819 (3d Cir. 2001) (citation omitted), and he has not demonstrated that he was substantially less culpable than Johnson, *Isaza-Zapata*, 148 F.3d at 240. Because the District Court's factual finding was not clearly erroneous, we will affirm its calculation of Taylor's total offense level.[4, 5]

---

[4] Taylor also argues that the District Court's finding was clearly erroneous because it was based on the facts of the third and fourth robberies rather than the second robbery. However, after Taylor voiced this concern at the sentencing hearing, the District Court acknowledged its initial confusion, heard additional argument, and announced its final ruling. There is no indication that the District Court's final ruling was the result of an inaccurate recollection of the second robbery.

2.

Taylor also claims that the District Court erred in improperly calculating his criminal history category by including two points for his two prior sentences for minor marijuana possession.[6] We see no abuse of discretion.

Under the Guidelines, sentences for misdemeanor and petty offenses are generally counted in a criminal history calculation. U.S.S.G. § 4A1.2(c). But certain listed and similar unlisted offenses are either not counted or counted only in limited circumstances. *Id.* To determine whether an unlisted offense is similar to a listed offense, we employ "a common sense approach" that analyzes factors such as "(i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." *Id.* at cmt. n.12(A).

---

[5] Taylor additionally asserts that the District Court erred by concluding as a matter of law that because a lookout plays an integral role in a three-man robbery, he cannot qualify for a downward adjustment based on a mitigating role. In light of the District Court's consideration of the evidence supporting the U.S.S.G. § 3B1.2 factors, it is clear that its ruling did not rest on any such legal conclusion.

[6] The Government counters that Taylor either abandoned or forfeited this claim by first raising it as an objection to his pre-sentence report, and by later contending only that he was entitled to a downward departure under U.S.S.G. § 4A1.3(b) in his sentencing memorandum and at his sentencing hearing. To the contrary, this argument was made by Taylor and rejected by the District Court at his sentencing hearing.

Taylor argues that the nominal punishments imposed for his two prior marijuana possession offenses are comparable to the punishments imposed for the listed offenses and indicate that marijuana possession offenses are not perceived as serious. However, the listed offenses do not include possession offenses for any quantity of any controlled substance, and a defendant's culpability for possession of even a small amount of marijuana for personal use is not insignificant to the extent that it promotes drug trafficking. Therefore, we will affirm the District Court's calculation of Taylor's criminal history category.[7]

## IV.

For the reasons stated above, we will affirm the District Court's judgments of conviction and sentence as to Johnson, Dancy, and Taylor.

---

[7] Taylor further contends that the District Court erred in failing to adequately explain its reasoning for including the two points in his criminal history category. Taylor is incorrect. The record reflects that the District Court expressly explained that in counting his two prior convictions for minor marijuana possession, it considered "the likelihood that he [would] commit other crimes," and the fact that he committed these crimes "while [he] was on parole." Appellee's App. at 52.