PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 11-1615

———

UNITED STATES OF AMERICA

v.

DOMINIQUE JOHNSON,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-09-cr-00685-002)
District Judge:  Honorable Mary A. McLaughlin

———

On Remand from the Supreme Court of the United States on
March 24, 2014
Argued on Remand: February 20, 2018

Before: JORDAN, SCIRICA and FISHER, *Circuit Judges*


(Filed: August 7, 2018)

Zane David Memeger, United States Attorney
Alicia M. Freind, Assistant United States Attorney
Nancy B. Winter, Assistant United States Attorney
Robert A. Zauzmer, Assistant United States Attorney
[ARGUED]
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
                              Counsel for Appellee


James V. Wade, Federal Public Defender
Ronald A. Krauss, Assistant Federal Public Defender
[ARGUED]
Office of Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
                              Counsel for Appellant


Dominique Johnson
Allenwood USP
P.O. Box 3000
White Deer, PA 17887
                              Pro Se Appellant
                              _____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Dominique Johnson was convicted of crimes related to his participation in a string of bank robberies and sentenced to 835 months' imprisonment. After we affirmed his conviction, Johnson filed a petition for writ of certiorari. The Supreme Court granted the petition, vacated our judgment, and remanded for reconsideration in light of *Alleyne v. United States*, 570 U.S. 99 (2013). After reviewing Johnson's arguments under *Alleyne*—as well as other arguments he raises—we will affirm.

I.

During the late spring and summer of 2009, Dominique Johnson participated in five bank robberies in the Philadelphia area. In early May, Johnson committed the first robbery by himself, carrying a BB gun. In late May, he committed the second robbery, again carrying a BB gun, but this time assisted by two others: Gregory Lawrence and Jerry Taylor.

In June, Johnson bought a .40 caliber Glock pistol. Johnson, Lawrence, and Taylor discussed another bank robbery, with the plan being that Taylor would commit the robbery using Johnson's newly-acquired pistol. Johnson and Lawrence advised Taylor on how to commit the robbery.

In early July, the three friends (joined by a fourth who served as the getaway driver) executed their plan and committed the third robbery. Johnson served as the lookout while Taylor ran into the bank and demanded money. During the robbery, Taylor pointed his gun at one teller and hit another teller with it. In mid-July, the same group committed the fourth robbery in the same fashion: Taylor robbed the bank while brandishing the pistol, and Johnson served as the lookout.

After that, Lawrence and Taylor decided not to participate in any more robberies. Johnson recruited two others, Amin Dancy and Christopher Montague, to commit a fifth robbery at the end of July. As before, Johnson served as the lookout, and someone else (this time Dancy) went into the bank and demanded money while brandishing Johnson's pistol.

The FBI investigated the robberies and eventually arrested Johnson. A jury convicted him of two counts of conspiracy to commit armed bank robbery, 18 U.S.C. § 371; one count of armed bank robbery, 18 U.S.C. § 2113(d); four counts of aiding and abetting armed bank robbery, 18 U.S.C. §§ 2 and 2113(d); and three counts of aiding and abetting the use and carrying of a firearm during a crime of violence, 18 U.S.C. §§ 2 and 924(c)(1).

For the first count of using a firearm during a crime of violence, the District Court imposed a sentence of seven years pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), which provides that if a person "uses or carries a firearm . . . in furtherance of" a "crime of violence" and "the firearm is brandished," the minimum sentence is seven years. For the second and third firearm counts, the court imposed two 25-year sentences pursuant to 18 U.S.C. § 924(c)(1)(C), which provides that "[i]n the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years." Johnson's total sentence for all ten counts was 835 months of imprisonment, or nearly seventy years.

Johnson appealed, and we affirmed his convictions and sentence in a non-precedential opinion. *United States v. Johnson*, 515 F. App'x 183, 186-88 (3d Cir. 2013). Johnson then petitioned the Supreme Court for a writ of certiorari,

4

which was granted. *Johnson v. United States*, 134 S. Ct. 1538 (2014). The Court entered a "grant, vacate, and remand" order stating: "Judgment vacated, and case remanded to the United States Court of Appeals for the Third Circuit for further consideration in light of *Alleyne v. United States*, 570 U.S. ___ (2013)." *Alleyne* had been decided three months after Johnson's appeal to this Court concluded.

On remand, we granted Johnson's motion to proceed *pro se* and he filed a brief raising numerous points of error, including that his § 924(c) sentences should be vacated under *Alleyne*. In its response, the Government relied heavily on our post-*Alleyne* opinion, *United States v. Lewis*, 766 F.3d 255 (3d Cir. 2014). However, before we heard Johnson's appeal, we reheard *Lewis* en banc and decided it differently. *United States v. Lewis*, 802 F.3d 449 (3d Cir. 2015) (en banc). In light of *Lewis*, we determined that Johnson needed counsel after all. We appointed counsel and asked for supplemental briefing. Johnson's counseled brief raised four issues: two relating to *Alleyne*, and two relying on other Supreme Court cases issued during the pendency of his appeal. We address those four issues first, and then turn to the arguments in Johnson's *pro se* brief.

## II.[1]

### A. *Alleyne* Arguments

Johnson argues that the District Court committed *Alleyne* errors by not submitting to the jury the question of

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to review the District Court's final order under 28 U.S.C. § 1291, and to review Johnson's sentence under 18 U.S.C. § 3742.

5

brandishing or the question of whether two of the three § 924(c) convictions were second or subsequent convictions.

To explain the significance of *Alleyne*, we begin with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). There, the Supreme Court ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Subsequently, in *Harris v. United States*, 536 U.S. 545, 567-69 (2002), the Court ruled that *Apprendi* did not apply to facts that increased the mandatory minimum—only the maximum. Finally, in *Alleyne*, the Court concluded that *Harris* was inconsistent with *Apprendi* and overruled it, holding that "there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum." *Alleyne*, 570 U.S. at 116.

The jury "indicated on the verdict form that Alleyne had used or carried a firearm during and in relation to a crime of violence, but did not indicate a finding that the firearm was brandished." *Id.* at 104 (internal quotation marks, alterations, and citation omitted). The using-or-carrying finding triggered the five-year mandatory minimum under § 924(c)(1)(A)(i). *Id.* The judge at sentencing found, by a preponderance of the evidence, that the firearm was brandished, and sentenced Alleyne to the seven-year mandatory minimum for brandishing under § 924(c)(1)(A)(ii). *Id.* The Supreme Court vacated and remanded. *Id.* at 117. The Court ruled that because "a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense," it must be found by a jury beyond a reasonable doubt. *Id.* at 112.

6

### 1. Brandishing

Here, the issue of brandishing was not submitted to the jury, but determined by the judge at sentencing. The seven-year mandatory minimum for brandishing, 18 U.S.C. § 924(c)(1)(A)(ii), is two years longer than for using and carrying, *id.* at § 924(c)(1)(A)(i). The parties agree that this was error under *Alleyne*. When analyzing *Alleyne* error, we first "address . . . whether the error was a sentencing error or a trial error." *Lewis*, 802 F.3d at 453. We then determine whether the defendant preserved his objection to the *Alleyne* error. If he did, the standard of review is plain error; if not, the harmless error doctrine applies. *Id.* at 456-57.

### a. Trial Error Versus Sentencing Error

Sentencing error occurs when a defendant is charged with and convicted of one crime, but sentenced for another. According to the plurality opinion, that happened in *Lewis*: the defendant was charged with using or carrying a firearm in relation to a crime of violence in violation of § 924(c) generally, but the judge sentenced him for brandishing in violation of § 924(c)(a)(A)(ii) specifically. *Lewis*, 802 F.3d at 455. The error occurred at sentencing, because "the defendant was sentenced for a crime for which he was *neither indicted nor tried*." *Id.* at 455 n.6.

Trial error, by contrast, occurs when the defendant is charged with, convicted of, and sentenced for a crime, but one of the elements of that crime is not submitted to the jury. That occurred in *United States v. Vazquez*: the defendant was charged with conspiracy to possess and distribute more than five kilograms of cocaine, the jury was not instructed to make factual findings regarding the amount of drugs, and the defendant was sentenced based on drug quantities the judge found at sentencing. 271 F.3d 93, 96-97 (3d Cir. 2001) (en

7

banc). The error occurred at trial, because the jury was given incomplete instructions. *Id.* at 101.[2]

Here, determining whether the *Alleyne* error was trial or sentencing error requires a close reading of the indictment. Johnson was convicted of using or carrying a firearm without a jury finding of brandishing, but he was sentenced for brandishing. If the indictment charged brandishing, there was trial error. *Vazquez*, 271 F.3d at 101-02. If the indictment did not charge brandishing, there was sentencing error. *Lewis*, 802 F.3d at 458.

The indictment count at issue, Count Five, charged Johnson with aiding and abetting a violation of 18 U.S.C. § 924(c)(1) during the early-July bank robbery, but did not specify how the violation was committed—i.e., using or carrying a firearm in relation to a crime of violence under (c)(1)(A)(i), brandishing it under (c)(1)(A)(ii), or discharging it under (c)(1)(A)(iii). However, Count Five expressly incorporated specific paragraphs of Count One alleging that Johnson's co-defendant "brandished a .40 caliber semiautomatic firearm" during the bank robbery.

The rules provide that "[a] count may incorporate by reference an allegation made in another count." Fed. R. Crim. P. 7(c)(1). Therefore, brandishing was charged in the

---

[2] We have sometimes referred to this second type of error as "trial and sentencing" error, reflecting the fact that two "inextricably intertwined" errors occurred—at trial (failing to charge the jury with a required element) and at sentencing (imposing a sentence based on an element not found by the jury). *Vazquez*, 271 F.3d at 101. In this opinion, we use the simpler term, "trial error," to highlight the contrast between this type of error and pure sentencing error.

indictment, which distinguishes this case from *Lewis*. The *Lewis* indictment implied brandishing without using the word: it alleged that the defendants "burst through the front door . . . armed with handguns and a shotgun, announced a robbery, forced customers and employees to the floor, threatened to shoot them, herded the victims into the basement and again forced them onto the floor, and stole money, wallets and cell phones." 802 F.3d at 460 (Smith, J., concurring). While those allegations were "clearly consistent with brandishing," the Government apparently "deci[ded] not to charge Lewis with brandishing." *Id.* (Smith, J., concurring). Here, by contrast, the § 924(c)(1) charge incorporated the allegation that a gun was "brandished." That is a distinction with a difference; the wording of the indictment matters. *See id.* at 461 (Smith, J., concurring) ("a defendant has the 'substantial right to be tried only on charges presented in an indictment returned by a grand jury'" (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960))).

Because Johnson was charged with and sentenced for brandishing, but the element of brandishing was not submitted to the jury, the *Alleyne* error was trial error. *See Vazquez*, 271 F.3d at 101-02.

### b. Standard Of Review

The standard of review is determined by the fact that Johnson relies on Supreme Court case law issued during his direct appeal. "[T]he general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision." *Henderson v. United States*, 568 U.S. 266, 271 (2013) (quoting *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969)). Therefore, when a Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)

9

(quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). However, while the new rule applies, Federal Rule of Criminal Procedure 52(b) limits our review to plain errors. *Henderson*, 568 U.S. at 270; *United States v. Pervez*, 871 F.2d 310, 314 (3d Cir. 1989). Here, although we had rendered our decision in Johnson's appeal before *Alleyne* was decided, the case remained on direct review because our mandate had not yet issued. *See infra* note 5 and accompanying text.

Under the plain error standard, an appellate court may exercise its discretion to correct (1) an error (2) that was plain—i.e., "clear or obvious, rather than subject to reasonable dispute"—and (3) that "affected the appellant's substantial rights"—i.e., there is "a reasonable probability" that it affected the outcome of the proceedings. *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *United States v. Puckett*, 556 U.S. 129, 135 (2009)). Even if the appellant meets those requirements, we will not remedy the error unless the appellant can show that it (4) "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 265 (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).[3]

c. Application Of The Standard Of Review To The Error

A court's failure to instruct on an element listed in the indictment is not plain error if we determine that it is "clear beyond a reasonable doubt that a rational jury" would have found the element in question "absent the error." *Lewis*, 802 F.3d at 456 (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). "[W]e properly consider the trial record on plain error review" of a trial error like this one. *Vazquez*, 271 F.3d at 102. Therefore, we will review the record of Johnson's trial to

---

[3] The Supreme Court's coincidentally-captioned 1997 *Johnson* decision did not involve the defendant in this case.

determine whether the District Court committed plain error when it failed to submit the issue of brandishing to the jury.

The first two plain-error factors are necessarily met—i.e., there is an error that is plain—where, as here, a District Court's ruling contravenes a later-issued Supreme Court opinion. *See Johnson*, 520 U.S. at 467-68. However, the third factor is not met in this case because there is not "a reasonable probability" that the court's failure to instruct the jury regarding brandishing "affected the outcome of the district court proceedings." *Marcus*, 560 U.S. at 262 (quoting *Puckett*, 556 U.S. at 135). Bank employees testified that Johnson's confederate, Taylor, brandished the gun during the robbery in question (the third robbery in early July). Johnson did not present evidence to the contrary. *See Vazquez*, 271 F.3d at 101 ("[S]ubstantial rights will be affected if, for example, 'the defendant contested the omitted element and raised evidence sufficient to support a contrary finding.'" (quoting *Neder*, 527 U.S. at 19)). In short, there is no reasonable probability that a properly-instructed jury would not have found brandishing. *See Vazquez*, 271 F.3d at 103-05 (third plain-error factor not met where "there [was] never . . . any question" that evidence supported element not submitted to the jury).

Because the first three plain-error prongs are not all met, we need not reach the fourth. *Marcus*, 560 U.S. at 265. If we did reach the fourth prong, however, we would not exercise our discretion to correct the error. Both we and the Supreme Court have concluded that where the jury is not instructed on an element of a crime, but the evidence of that element is overwhelming and uncontroverted, the fourth prong is not met: the error does not "seriously affect[] the fairness, integrity or public reputation" of the proceedings. *Vazquez*, 271 F.3d at 106; *Johnson*, 520 U.S. at 470.

11

Johnson points to the *Lewis* plurality opinion, which says that "[t]he motivating principle behind *Apprendi* and *Alleyne* is that judges must not decide facts that change the mandatory maximum or minimum; juries must do so. If we affirm because the evidence is overwhelming, then we are performing the very task that *Apprendi* and *Alleyne* instruct judges not to perform." 802 F.3d at 456. However, the context was different in *Lewis*; the error there was sentencing error. The plurality refused to examine the trial record to determine whether there was evidence of a crime Lewis had not been charged with. Here, brandishing was charged, and the error was the failure to submit brandishing to the jury. Supreme Court precedent establishes that we review the trial record in cases like this one. *See Johnson*, 520 U.S. at 470. We follow the dictates of *Apprendi* and *Alleyne* by asking whether a properly instructed jury would have found, given the opportunity, that the gun was brandished (as charged in the indictment). In this case, the jury would have so found.

## 2. Second Or Subsequent Conviction

Johnson argues that the District Court committed a second *Alleyne* error because it did not ask the jury to determine whether two of his three § 924(c) convictions were second or subsequent convictions, but nevertheless imposed mandatory twenty-five year minimum sentences for "second or subsequent conviction[s]" under 18 U.S.C. § 924(c)(1)(C)(i).

This was not error. The fact of a second or subsequent conviction is not an element of the offense and therefore need not be submitted to the jury. *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998). Even if there is tension between *Almendarez-Torres* and *Alleyne*, as Johnson argues, we lack the power to resolve it. *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of this Court has direct

application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989))).

Moreover, the language of *Apprendi* forecloses Johnson's argument. Its key holding is that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime . . . must be submitted to a jury . . . ." 530 U.S. at 490 (emphasis added). We have observed that *Alleyne* did not alter the *Almendarez-Torres* rule. *United States v. Burnett*, 773 F.3d 122, 136 (3d Cir. 2014). *Almendarez-Torres* is good law, and the District Court did not err by following it.

B. Arguments Based On Other Supreme Court Cases

Besides his *Alleyne* arguments, Johnson makes arguments based on Supreme Court cases that were issued during the pendency of his appeal: *Rosemond v. United States*, 134 S. Ct. 1240 (2014), and *Johnson v. United States*, 135 S. Ct. 2551 (2015).[4] The Government contends that Johnson forfeited these arguments because he did not raise them in his opening brief at the outset of this appeal (that is, his brief filed before the Supreme Court's "grant, vacate, and remand" order). The Government also argues that we should not consider these arguments because they are "outside the scope of the Supreme Court's remand." Gov't Second Supp. Br. 29; *id.* at 40-41. Neither argument is persuasive.

---

[4] The Supreme Court's 2015 *Johnson* decision is another coincidentally-captioned case that did not involve the defendant in this case.

13

The Government wisely refrains from making a frontal attack on the settled proposition that "[w]hen a decision of [the Supreme] Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." *Schriro*, 542 U.S. at 351 (quoting *Griffith*, 479 U.S. at 328). Instead, the Government asserts that the *Schriro* rule "has nothing to do with whether the underlying issue was preserved." Gov't Second Supp. Br. 30. In other words, the Government posits that Johnson was required to include his arguments in his opening appellate brief, even though the law supporting them did not yet exist. The brief was filed in 2011, and the cases he relies on were issued in 2014 and 2015.

At oral argument, the Government was unable to explain how its proposed rule could co-exist with *Schriro*, and indeed, co-existence is impossible. Supreme Court decisions apply to "all criminal cases still pending on direct review," *Schriro*, 542 U.S. at 351, not just appeals in which the opening brief has not yet been filed. To be sure, Johnson's direct appeal has been extraordinarily lengthy, giving him a longer-than-usual window in which to potentially reap the benefit of new law. But a case is still pending on direct review until our mandate finally issues, *Finberg v. Sullivan*, 658 F.2d 93, 99 (3d Cir. 1980), regardless of the amount of time that elapses. And here, the mandate has not finally issued.[5]

The Government's proposed rule is not only inconsistent with controlling precedent, it is unworkable. Lawyers cannot be required to advance arguments in opening

_____

[5] The mandate was issued once in error, but recalled because Johnson had filed a timely petition for rehearing. It was later issued again, but was once again recalled in light of the Supreme Court's order granting certiorari, vacating, and remanding.

appellate briefs that are contingent on a possible future change in the law. *See Johnson*, 520 U.S. at 468 (rejecting similar proposed rule for trial objections because it "would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent").

The Government's other contention—that the *Johnson* and *Rosemond* arguments are outside the scope of the remand order—is also unsuccessful. The Supreme Court's order remanding this case to us does not speak to issues other than *Alleyne*, and we will not interpret it as wiping away, *sub silentio*, the well-established rule of *Schriro*.[6] Therefore, we will consider Johnson's arguments based on case law issued during the pendency of his appeal.

### 1. Bank Robbery Is A Crime Of Violence

Three of Johnson's convictions were for violations of § 924(c), which prohibits brandishing a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). The predicate crime of violence was bank robbery, 18 U.S.C. § 2113(d). Johnson argues that bank robbery is not a crime of violence under *Johnson*, 135 S. Ct. at 2551, and therefore his § 924(c) convictions should be vacated. We disagree.

To determine whether § 2113(d) bank robbery is a crime of violence, we employ the categorical approach, which "requires us to compare the elements of the statute under which

---

[6] The Government cites cases ruling that issues outside the scope of a "grant, vacate, and remand" order cannot be addressed. Only one appears to involve arguments based on cases issued during the pendency of the appeal. *See United States v. Duarte-Juarez*, 441 F.3d 336, 340 (5th Cir. 2006). *Duarte-Juarez* is not binding and we decline to follow it.

the defendant was convicted to the [§ 924(c)] definition of 'crime of violence.'" *United States v. Wilson*, 880 F.3d 80, 83 (3d Cir. 2018). Courts "may 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). A crime is only a "crime of violence" if "the least culpable conduct hypothetically necessary to sustain a conviction under the statute" meets the definition. *Wilson*, 880 F.3d at 84 (quoting *United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016)).

Turning to the statutory definition at issue here, a "crime of violence" is a felony offense:

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Thus, a crime can be classified as a crime of violence under either the elements clause, § 924(c)(3)(A), or the residual clause, § 924(c)(3)(B).

In *Johnson*, the Supreme Court considered the residual clause of a different portion of § 924—the Armed Career Criminal Act, § 924(e)—that defines "violent felony" to include felonies that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Court ruled the ACCA residual clause void for vagueness because it does not clarify "how to estimate the risk posed by a crime" or "how much risk it takes for a

16

crime to qualify as a violent felony." *Johnson*, 135 S. Ct. at 2557-58.

Johnson argues that the § 924(c) residual clause is essentially the same as the ACCA residual clause, and therefore, the § 924(c) residual clause is also void for vagueness. However, as Johnson recognizes, our agreement on this point would not be enough to vacate his convictions. A crime is a "crime of violence" if it meets either the elements clause or the residual clause. Therefore, in order to reach Johnson's residual-clause argument, we would need to agree with him that § 2113(d) bank robbery is not a crime of violence under the elements clause.

Johnson focuses on § 2113(a), and specifically the fact that it proscribes bank robbery "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). Intimidation, Johnson argues, does not necessarily require the "use, attempted use, or threatened use of physical force" under the § 924(c) elements clause definition. However, Johnson was not convicted under § 2113(a), but rather § 2113(d), which provides penalties for any person who, "in committing . . . any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 2113(d). And "assault[ing]" someone or putting a life in "jeopardy . . . by the use of a dangerous weapon," *id.*, meets the elements clause: it "has as an element the use, attempted use, or threatened use of physical force," *id.* at § 924(c)(3)(A). One cannot assault a person, or jeopardize his or her life with a dangerous weapon, unless one uses, attempts to use, or threatens physical force.

Moreover, even if Johnson's sole focus on § 2113(a) were analytically sound, it would be unavailing. We recently held that § 2113(a) bank robbery by intimidation—the least

17

culpable conduct contemplated in subsection (a)—is a "crime of violence" under a clause in the Sentencing Guidelines that is worded "nearly identically" to the § 924(c) elements clause. *Wilson*, 880 F.3d at 83. The Guideline at issue in *Wilson* provides that a "crime of violence" is one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a); *compare* 18 U.S.C. § 924(c)(3)(A) (crime of violence is one that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another").

We held that "[u]narmed bank robbery by intimidation clearly does involve the 'threatened use of physical force against the person of another.'" *Wilson*, 880 F.3d at 84-85. Our conclusion was based on "a common sense understanding of the word 'intimidation.'" *Id.* at 85. We also relied on our precedent, which "establishes that § 2113(a)'s prohibition on taking . . . 'property or money or any other thing of value' either 'by force and violence, or by intimidation' has as an element the 'threat of force.'" *Id.* (quoting *United States v. Askari*, 140 F.3d 536, 541 (3d Cir. 1998) (en banc), *vacated on other grounds*, 159 F.3d 774 (3d Cir. 1998)).

*Wilson* forecloses Johnson's argument that bank robbery is not crime of violence under the § 924(c)(3) elements clause. Therefore, we do not reach the question of whether the residual clause is void for vagueness.

## 2. The Aiding And Abetting Instruction Did Not Amount To Plain Error

Johnson argues that his aiding and abetting convictions should be vacated because the jury instruction on aiding and abetting violated *Rosemond*, 134 S. Ct. at 1243. We conclude that any such error does not survive plain error review.

In order to aid and abet a § 924(c) offense (brandishing of a firearm), the defendant must know beforehand that a gun will be used. *Rosemond*, 134 S. Ct. at 1249.[7] The Supreme Court ruled that a defendant like Johnson, who actively participates in a crime, "has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." *Id.* The "defendant's knowledge of a firearm must be advance knowledge" because that "enables him to make the relevant legal (and indeed, moral) choice." *Id.* With advance knowledge, a defendant can try to persuade his confederates to alter the plan, or he can withdraw from it. *Id.* Becoming aware of the gun as the crime is unfolding is not enough: the defendant "may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime." *Id.*

Here, the jury was instructed that "[t]he second element of aiding and abetting is that the defendant . . . knew that the offense charged was going to be committed *or was being committed* by the principal." Supp. App. 1444 (emphasis added). Therefore, the jury could have convicted Johnson either on the basis that he knew the gun "was going to be" brandished, or that it "was being" brandished. *See id.* The second alternative—that Johnson was aware of the brandishing only as it occurred—is erroneous under *Rosemond*.

---

[7] Section 924(c) penalizes using or carrying, brandishing, or discharging a gun in relation to either a "crime of violence" or a "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). In *Rosemond*, the predicate crime was drug trafficking, while here, the predicate crime is a crime of violence. For the purposes of this opinion, we accept Johnson's implicit argument that the distinction is not material.

Johnson argues that the aiding and abetting instruction was also erroneous as applied to his bank robbery convictions. Although Johnson does not articulate his logic, we infer that it goes as follows. A § 924(c) violation consists of a predicate act (a crime of violence) and the use or carrying of a firearm. Similarly, a § 2113(d) violation consists of a predicate act (bank robbery) and the use of a dangerous weapon. Arguably, therefore, because the two statutes are similar in structure, the *Rosemond* advance knowledge requirement applies to § 2113(d) as well.

Stated this way, Johnson's reading of *Rosemond* has an appealing consistency. However, we need not decide whether *Rosemond* extends beyond § 924(c) because the plain-error standard is not met with regard to either the § 924(c) or § 2113(d) convictions. Although the first two factors—error that is plain, *see Johnson*, 520 U.S. at 467-68—are present for the § 924(c) convictions and possibly also for the § 2113(d) convictions, the third factor is not met. There is not "a reasonable probability" that the error "affect[ed] the outcome of the . . . proceedings." *Marcus*, 560 U.S. at 262 (quoting *Puckett*, 556 U.S. at 135). If the jury had been properly instructed, there is not a reasonable probability that Johnson would have been acquitted, because there was ample evidence that he knew in advance that the firearm would be brandished (as § 924(c) puts it), and that a dangerous weapon would be used (as § 2113(d) puts it).

The overwhelming and uncontroverted evidence showing Johnson's foreknowledge of his confederates' use of the weapon begins with his first solo bank robbery. There, Johnson brandished what appeared to be a pistol (actually a BB gun), at one point putting it to the head of one of the tellers. Later, Johnson described the first bank robbery to Lawrence, who wanted to commit a bank robbery too, because he needed

20

money. The two men planned and executed the second robbery together. As they were driving to the bank, Johnson gave Lawrence the same BB gun Johnson had used during the first robbery. When Lawrence entered the bank, he immediately pulled the gun from his pocket, jumped up on the bank counter, and demanded money.

Lawrence testified that he, Johnson, and Taylor planned the third robbery and that Taylor was to go in the bank, hop over the counter, and get the money while carrying a gun—this time, the real gun that Johnson had bought. The getaway driver also testified that the plan was for Taylor to use the gun. Taylor executed the robbery as planned. During the robbery, he pointed the gun at a teller's head.

The same group of individuals then planned the fourth robbery. The morning of the robbery, Johnson got his gun and brought it to where the friends met up. During the robbery, Taylor held the gun to a teller's head.

For the fifth robbery, Amin Dancy was to be the stickup man, so Johnson gave him the gun. Dancy carried the gun into the bank, and during the robbery, he put the gun to a teller's ribs.

At trial, Johnson admitted the essential facts of the five bank robberies, but argued that he was not the ringleader and that the cooperating witnesses' testimony lacked credibility. He did not present any evidence that would contradict the ample evidence showing that he helped plan each robbery, that the plan for each robbery included using and brandishing a gun, and that he provided the gun for each robbery. We therefore conclude that the third required factor of the plain-error analysis is not present: even if the jury had been instructed that Johnson needed to know in advance that the gun would be brandished, there is not a reasonable probability that it would

have acquitted Johnson of the aiding and abetting charges. *See Vazquez*, 271 F.3d at 104 (third plain-error factor not met where "there [was] never . . . any question" about the element that was not submitted to the jury).[8] Therefore, the *Rosemond* error does not meet the plain-error standard, and we will affirm the aiding and abetting convictions.

## C. Johnson's *Pro Se* Arguments

The history of Johnson's representation on appeal is recounted above. *See* Section I., *supra*. To recap: Johnson was represented and lost his appeal; the Supreme Court granted his *pro se* petition for certiorari and issued its "grant, vacate, and remand" order; Johnson proceeded *pro se* with our permission and filed a brief; we appointed a new attorney to represent him; and the new attorney filed a brief as well. Thus, on remand from the Supreme Court, we have before us both *pro se* and counseled briefs.

The Government argues that we should not address the arguments in Johnson's *pro se* brief because they were not presented in his opening brief (*i.e.*, the one filed before the Supreme Court remanded the case to us). The Government also argues that addressing Johnson's *pro se* arguments would violate our rule forbidding *pro se* filings by represented parties.

---

[8] If we were to reach the fourth plain-error factor, we would not exercise our discretion to remedy the error. Where the jury is not instructed on an element of a crime, but the evidence of that element is overwhelming and uncontroverted, the error does not "seriously affect[] the fairness, integrity or public reputation" of the proceedings. *Vazquez*, 271 F.3d at 105-06; *see also Johnson*, 520 U.S. at 470.

The rule against hybrid representation forbids a party to file a *pro se* brief supplementing his counseled brief. *United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012); 3d Cir. L.A.R. 31.3. However, there is no hybrid-representation case involving an appellant who, like Johnson, filed a *pro se* brief with our permission and later filed a counseled brief after we appointed an attorney. Therefore, the usual rule against hybrid representation does not apply. In addition, the record does not show that Johnson was advised that the counseled brief would supersede his *pro se* brief, so it would be unfair to rule after the fact that his *pro se* arguments were for naught.

The rule requiring appellants to raise all arguments in their opening briefs "yields in 'extraordinary circumstances.'" *United States v. Andrews*, 681 F.3d 509, 532 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 195 (3d Cir. 2011)). To weigh whether the circumstances are extraordinary, we consider "(1) 'whether there is some excuse for the [appellant's] failure to raise the issue in the opening brief'; (2) the extent to which the opposing party would be prejudiced by our considering the issue; and (3) 'whether failure to consider the argument would lead to a miscarriage of justice or undermine confidence in the judicial system.'" *Id.* (quoting *Albertson*, 645 F.3d at 195). The factors need not all be met; instead, we balance them to determine whether to consider newly-raised arguments. *See Albertson*, 645 F.3d at 195 ("Applied to the facts of [this] case, we believe the balance [of the three factors] weighs in favor of reviewing the merits . . . .").

Given that Johnson requested to proceed *pro se* because of his prior counsel's failure to raise issues he believed meritorious, there is some excuse for the waiver under the first factor. Under the second factor, there is no prejudice to the Government because it filed a responsive brief addressing the

23

*pro se* arguments it now says we should ignore. The third factor, miscarriage of justice, is "somewhat similar to the 'plain error' rule, which allows appellate courts to correct an error" if it "affected the defendant's substantial rights and 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Andrews*, 681 F.3d at 532 (quoting *Albertson*, 645 F.3d at 196). As we will explain below, none of Johnson's *pro se* arguments are meritorious, and therefore the asserted errors do not affect his substantial rights or the fairness or integrity of the proceedings. But because the first two factors weigh in favor of review, we will reach his *pro se* arguments.[9]

### 1. Double Jeopardy Under *Diaz*

Johnson argues that one of his convictions for brandishing a firearm under § 924(c) violates the Double Jeopardy clause under *United States v. Diaz*, 592 F.3d 467 (3d Cir. 2010). Because this error was not raised at trial, we apply the plain-error standard. Fed. R. Crim. P. 52(b); *Marcus*, 560 U.S. at 262.

In *Diaz*, we held that the Double Jeopardy Clause requires each § 924(c) conviction to be tied to a separate predicate offense. 592 F.3d at 474-75. Here, Counts Five and Seven each charge Johnson with a § 924(c) violation. For Count Five, the predicate crimes are conspiracy (Count One)

---

[9] According to the Government, none of Johnson's *pro se* arguments were raised at trial, which means the plain error standard applies. We will address the standard of review as follows. For the double jeopardy argument, which is colorable, we will explicitly apply the plain-error test. For the remaining *pro se* arguments, we will simply explain why each asserted error was not an error at all—and, thus, why the argument fails, regardless of the standard of review.

and the July 3 bank robbery (Count Four). For Count Seven, the predicate crimes are conspiracy (Count One) and the July 17 bank robbery (Count Six). The Government concedes "the possibility of [*Diaz*] error" because "[i]t is . . . theoretically possible that a jury could convict for both Counts Five and Seven on the basis of the same predicate offense (Count One)." Gov't Supp. Br. 22.

The first two prongs of the plain error standard are met: there is error that was plain, as the Government agrees. However, the third prong is not met—the error did not affect Johnson's substantial rights. *See Marcus*, 560 U.S. at 262. The jury convicted him of the unique predicate crimes (the two bank robberies, Counts Four and Six) as well as the common predicate crime (the conspiracy, Count One). As the Government points out, "it would have been irrational for a jury to . . . find Johnson guilty of [the two] [§] 924(c) offenses . . . by concluding that the predicate for each was only the conspiracy charge . . . ." Gov't Supp. Br. 22.

Even if the first three prongs of the plain error test were met, we would not exercise our discretion to reverse because the error does not affect the fairness and integrity of the proceedings. *See Marcus*, 560 U.S. at 265. Johnson was found guilty of two offenses that constitute unique predicate crimes for the two § 924(c) counts.

### 2. FBI Agent's Alleged Perjury

Johnson argues that the only witness at the suppression hearing, FBI Agent Donald Asper, committed perjury, and asks us to remand for an evidentiary hearing on this topic. We have carefully reviewed Johnson's lengthy argument, as well as Agent Asper's testimony, and there is no need for an evidentiary hearing.

Agent Asper testified that a witness to one of the robberies observed the license plate number of the getaway car, a silver Buick. The getaway car was registered to a man named William Childs, whom Agent Asper found and interviewed. Childs provided Asper with an abundance of information. Among other things: Childs told Agent Asper that Johnson bought the Buick and asked Childs to register it in Childs' name; he identified photos of Taylor, Lawrence, and Johnson; and he said that Taylor, Lawrence, and Johnson had been involved in bank robberies and had told Childs to take the heat for the car. Agent Asper then set up surveillance to find Lawrence. The surveillance was doubly successful, locating not only Lawrence, but also Johnson, who was in the silver Buick at the time. Agents arrested both men. A few hours later—unrelated to the arrest—a witness to one of the robberies identified Johnson in a photo array.

Johnson contends there was no probable cause to arrest him, but instead of a traditional Fourth Amendment argument, he attacks Agent Asper's honesty on the witness stand. In doing so, Johnson ignores every fact except that the photo identification took place after his arrest. The judge's ruling at the evidentiary hearing puts this issue to rest:

> Mr. Johnson, I say some of this for your benefit, sir, because I can appreciate your thinking, honestly, because you're thinking, you know, but they didn't have the ID until later . . . . And I think here with the . . . getaway car, Mr. Johnson's connection to that car, ownership of the car, Mr. Childs' report to the Special Agent as to Mr. Johnson's comments, . . . Mr. Childs picking out Mr. Johnson . . . , Mr. Johnson being in the car when they go to arrest Mr. Lawrence, and then Mr. Johnson getting out of the car and

26

together they go into the house, I think when you put all of that together . . . I do think that there is ample probable cause for the arrest of Mr. Johnson . . . before the ID . . . .

Supp. App. 44-45. Johnson's self-serving version of the facts does not undermine Agent Asper's testimony. That testimony, which we have only partially recounted, outlines how the investigation unfolded and why the agents had probable cause to arrest Johnson.

### 3. Tenth Amendment

Johnson argues that "if a search warrant was required then the 10th Amendment requires the Department of Justice to obtain subject matter jurisdiction because the administration of criminal justice under our federal system has rested with the States." *Pro Se* Supp. Br. 26. However, Johnson cites only Fourth Amendment case law, and cites no authorities to support his reading of the Tenth Amendment. We note that "[t]he FBI is authorized 'to detect and prosecute crimes against the United States.'" *United States v. Rodgers*, 466 U.S. 475, 481 (1984) (quoting 28 U.S.C. § 533(1)).

### 4. Sufficiency Of Aiding And Abetting Evidence

Johnson argues that the trial evidence was insufficient to support his aiding and abetting convictions. However, we determined—in the initial phase of this appeal, before the Supreme Court's "grant, vacate, and remand" order—that the evidence was sufficient. *Johnson*, 515 F. App'x at 187-88. Under the law of the case doctrine, "that decision should continue to govern" unless there are "extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816-17 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).

There are no extraordinary circumstances. We have already explained, in our discussion of *Rosemond*, that overwhelming and uncontroverted evidence showed Johnson's prior knowledge that the gun would be used in the bank robberies. *See* Section III.B.2., *supra*. Viewed in the light most favorable to the Government, that same evidence permitted a rational trier of fact to convict Johnson of aiding and abetting. *See United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc). Johnson's argument ignores much of the evidence and rests on his insistence that he was not present inside the banks, a fact that does not carry the legal weight he wishes to attribute to it.

### 5. Effect On Interstate Commerce

Johnson argues that the indictment needed to allege, and the jury needed to find, that his crimes affected interstate commerce. He relies on *Bond v. United States*, 564 U.S. 211 (2011), but that case stands only for the proposition that a defendant has standing to challenge the statute of conviction on Tenth Amendment grounds. *Id.* at 225-26. *Bond* says nothing about the requirements for the indictment or the proof at trial. In addition, Johnson contends that the FDIC does not replace money lost to bank robbery, and without FDIC loss, there is no effect on interstate commerce. However, we have ruled that § 2113 bank robbery "is an economic activity that . . . substantially affects interstate commerce and, thus, is an activity that Congress was well within its rights to criminalize pursuant to its power under the Commerce Clause." *United States v. Spinello*, 265 F.3d 150, 159 (3d Cir. 2001). We lack the power to revisit this conclusion. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 610-11 (3d Cir. 2002) ("It is this court's tradition that a panel may not overrule or disregard a prior panel decision unless that decision has been overruled by the

28

Supreme Court or by our own court sitting en banc.") (internal quotation marks and citation omitted).

### 6. Motion In Limine

Johnson argues that the District Court violated his constitutional rights by granting a motion in limine that would have allowed the Government to rebut Johnson's testimony (if he had testified) with evidence of his statements to investigators. Johnson clearly feels that this ruling constrained his defense. However, the authorities he cites do not show error. For example, *Sullivan v. Louisiana*, 508 U.S. 275 (1993), deals with deficient instructions regarding guilt beyond a reasonable doubt, and *United States v. Gaudin*, 515 U.S. 506 (1995), deals with failure to submit the element of materiality to the jury in a perjury prosecution.

### 7. "Interlocking" Errors

Johnson argues that the District Court committed five interlocking, reversible errors. We address these in turn.

First, Johnson argues that he was prevented from testifying because he feared for his family and was assaulted in pretrial detention. However, the facts he relies on either are outside the record or constitute a continuation of his self-serving (and unsupported) version of events.

Second, Johnson argues that the District Court should have severed the first, second, and fifth robberies and tried each one individually. Joinder was appropriate, however, because the five bank robberies were a "series of acts or transactions." Fed. R. Crim. P. 8(b); *see United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003) (Rule 8(b) governs joinder of multiple offenses). A defendant arguing for severance "must 'pinpoint clear and substantial prejudice resulting in an unfair trial.'" *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010), *as*

29

*amended* (Oct. 21, 2010) (quoting *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992)). Johnson argues generally that the joint trial exposed the jury to evidence of his other bad acts in violation of Federal Rule of Evidence 404. However, he fails to identify any clear and substantial prejudice, and we perceive none.

Third, Johnson attacks the testimony of FBI agents and a cooperating witness. Johnson declares that Agent Shute relied on inaccurate data when testifying about cell site analysis, but he never hints at what the inaccuracies were. He argues that Agent Banis, who presented call detail records, had no independent evidence that Johnson's cell phone number was really his. However, Agent Banis testified that Lawrence and Johnson's sister identified the number as Johnson's. Finally, Johnson argues that Lawrence offered improper expert testimony about the meaning of a phone call between Johnson and Amin Dancy. Such testimony offered by a cooperating witness is lay opinion testimony, not expert testimony. *See United States v. Anderskow*, 88 F.3d 245, 250 (3d Cir. 1996). Lawrence's testimony was a proper lay opinion: it was rationally based on his perception (he was present during the phone call), was helpful to the jury, and was not based on specialized knowledge. Fed. R. Evid. 701.

Fourth, Johnson argues that certain evidence—video, pictures, and bank teller testimony—was cumulative and should not have been admitted under Federal Rule of Evidence 403. However, evidence about what took place inside the banks does not fail the Rule 403 balancing test merely because Johnson was the lookout, while his confederates—not Johnson himself—went into the banks. Nor is it needlessly cumulative to present evidence of the predicate crimes that Johnson conspired to commit and then aided and abetted.

30

Fifth, Johnson argues that the cumulative weight of the errors rendered his trial unfair. This argument fails because his other assignments of error fail.

## III.

For the reasons stated above, we will affirm.