**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1502
_____

UNITED STATES OF AMERICA

v.

JESHUA PAONESSA-VELEZ,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 1-15-cr-00303-001
District Judge:  The Honorable Sylvia H. Rambo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 24, 2019

Before: SMITH, *Chief Judge*, CHAGARES, and BIBAS, *Circuit Judges*

(Filed: April 3, 2019)
_____

OPINION*
_____


SMITH, *Chief Judge*.

    Jeshua Paonessa-Velez appeals the District Court's denial of his motion for a

downward departure.  Because the District Court implicitly acknowledged its discretion to

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

depart but declined to do so, we lack jurisdiction to review the departure decision. *United States v. Handerhan*, 739 F.3d 114, 121 (3d Cir. 2014); *United States v. Denardi*, 892 F.2d 269, 272 (3d Cir. 1989); *see also United States v. Ruiz*, 536 U.S. 622, 626–28 (2002). We will therefore dismiss the appeal.

## I.

In late 2014 Velez, along with at least two others, began defrauding banks and their customers by installing skimming devices on ATMs. These skimming devices transmitted customers' account information to access devices, which Velez then used to either make purchases or withdraw cash. From October 2014 to December 2015, Velez defrauded at least eight banks and thirty-six individuals, resulting in between $95,000 and $150,000 in losses. The government ultimately charged Velez with forty-two counts related to the scheme: ten counts of bank fraud, in violation of 18 U.S.C. §§ 2, 1344; and thirty-two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 2, 1028A(a)(1). Velez pleaded guilty to four bank fraud counts and four aggravated identity theft counts.

After Velez was charged—but before he was arrested—he got into more trouble. An officer responded to a report of a suspicious vehicle (driven by Velez) that was parked near a bank. After the officer approached the vehicle and asked Velez for identification, Velez took off at a high rate of speed. Velez led the officer on a lengthy pursuit over narrow, curvy roads. At times the chase exceeded 100 miles per hour. Although the officer failed to apprehend Velez, he surrendered the following day. As a result of the chase, Velez pleaded guilty to several state charges, including fleeing from an officer and reckless endangerment. While the federal charges remained pending, Velez served approximately

2

five months for the state offenses.[1]

Velez's state charges affected his federal sentence. The presentence report ("PSR") prepared by the probation officer for Velez's federal sentencing considered the chase to be relevant conduct. The PSR therefore advised that a downward departure may be warranted to account for the five months Velez had served in state custody.[2] Velez thereafter sought a downward departure pursuant to United States Sentencing Guidelines § 5K2.23.[3] At sentencing, Velez renewed his request for a downward departure. The District Court calculated Velez's total offense level as twenty-one and his criminal history category as I, for an advisory Guidelines range of thirty-seven to forty-six months. Velez was subject to a two-year consecutive sentence for the aggravated identity theft convictions. *See* 18 U.S.C. § 1028A(a)(1), (b)(2), (b)(4). The Court—without explicitly ruling on Velez's

---

[1] Less than a month after Velez's release from state custody—and while his federal charges were still pending—his federal pretrial release was revoked for assaulting a codefendant. Although Velez was not charged, the incident increased his federal sentence because the District Court imposed an obstruction of justice enhancement and declined to reduce Velez's total offense level for acceptance of responsibility.

[2] The state charges increased Velez's total offense level because the District Court applied a two-level enhancement for recklessly creating a substantial risk of death or serious bodily injury to another person. *See* U.S. Sentencing Guidelines Manual § 3C1.2 (U.S. Sentencing Comm'n 2016). That enhancement is not at issue on appeal.

[3] United States Sentencing Guidelines § 5K2.23 provides:

> A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment or Anticipated Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

U.S. Sentencing Guidelines Manual § 5K2.23 (U.S. Sentencing Comm'n 2016).

departure request—imposed a total sentence of sixty-one months of imprisonment and three years of supervised release.[4] The District Court recommended that the Bureau of Prisons credit Velez for the five months he spent in state custody, but it declined to do so.[5] Velez timely appealed.

## II.

The sole issue in this appeal is whether the District Court committed plain error by implicitly denying Velez's motion for a downward departure to account for the five months he had served for the state offenses.

We review for plain error because Velez failed to object "at the time the procedural error [was] made," i.e., after the District Court imposed his sentence. *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc). Under the plain error standard, we "may exercise [our] discretion to correct (1) an error (2) that was plain—i.e., clear or obvious, rather than subject to reasonable dispute—and (3) that affected the appellant's substantial rights—i.e., there is a reasonable probability that it affected the outcome of the proceedings." *United States v. Johnson*, 899 F.3d 191, 200 (3d Cir. 2018) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 647 (Dec. 10, 2018). Even then, we will not remedy the plain error unless it seriously affected "the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

---

[4] The District Court imposed thirty-seven months on each of the bank fraud counts (to run concurrently) and twenty-four months on each of the aggravated identity theft counts (to run concurrently to one another and consecutively to the bank fraud counts).

[5] The Court grants Velez's unopposed motion to supplement the record with documentation from the Bureau of Prisons denying him time served credit.

4

We review the reasonableness of a sentence by (1) ensuring that the District Court "committed no significant procedural error" and (2) considering whether the sentence is "substantively reasonable given the totality of the circumstances." *Handerhan*, 739 F.3d at 119 (internal quotation marks omitted). Procedural error may occur when the District Court fails to follow a three-step sequential process: (1) calculating a defendant's Guidelines range; (2) formally ruling on the parties' motions and stating on the record whether the Court is granting a departure; and (3) considering the relevant 18 U.S.C. § 3553(a) factors. *Id.* at 120. Velez does not challenge the first or third steps. Rather, he claims that his sentence is procedurally unreasonable because the District Court failed to rule on his motion for a downward departure.

Time and again, we have instructed District Courts to clearly and formally rule on motions for downward departures. *See, e.g.*, *id.* at 121. We have explained that "[t]he need for a clear ruling is particularly acute" in the downward departure context because our jurisdiction "depend[s] on a district court's reason for denial." *Id.* (internal quotation marks omitted). If the District Court believed it lacked the legal authority to depart, we have jurisdiction to review for legal error. *Id.* On the other hand, if the District Court recognized its authority to depart but chose not to do so, "we lack[] jurisdiction to review that decision." *Id.* (internal quotation marks omitted).

Generally, when the District Court's stated reasons for ruling on a departure motion are ambiguous, "the proper remedy is to vacate the sentence and remand for the district court to clarify the basis for its ruling." *Handerhan*, 739 F.3d at 121 (internal quotation marks omitted). Nevertheless, our "admonition against ambiguous rulings on downward

5

departure requests is not ironclad." *Id.* In some instances, we can "infer meaning from the District Court's actions in a case." *Id.* (internal quotation marks omitted). Of course, "having to infer the District Court's thinking is not our preferred course." *Id.* (internal quotation marks omitted).

Here, we can infer from the District Court's actions at Velez's sentencing that the Court knew it could grant a downward departure but decided not to. After Velez reiterated his request for a downward departure, the Court—without explicitly ruling on that request—explained that it would instead "recommend to the Bureau of Prisons that they give [Velez] credit for the time he has served in Centre County Prison prior to this date." App. 54; *see also id.* at 5 (recommending in the Judgment and Commitment Order that Velez "receive credit for the time served in Centre County Prison for relevant conduct"). The Court clearly was aware of Velez's request for a downward departure when it fashioned an alternative remedy. This is sufficient for us to infer that the District Court recognized its ability to depart but chose not to do so. We reiterate, however, that divining meaning in the absence of an explicit ruling on a departure motion is not our "preferred course." *Handerhan*, 739 F.3d at 121. Because the Court exercised its discretion in denying Velez's motion for a downward departure, we lack jurisdiction to review that decision.[6] *See id.*; *see also Denardi*, 892 F.2d at 272.

---

[6] Velez's brief only raises the downward departure issue. To the extent the brief could be read as challenging Velez's sentence on any other ground, we would affirm. *Cf. United States v. Denardi*, 892 F.2d 269, 272 (3d Cir. 1989).

6

## III.

For the reasons set forth above, we will dismiss Velez's appeal.