**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3281
_____

UNITED STATES OF AMERICA

v.

ALBERT WILLIAM UPSHUR,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-18-cr-00124-002)
Honorable Wendy Beetlestone, U.S. District Judge

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 5, 2022

Before: KRAUSE, BIBAS, and AMBRO, *Circuit Judges*

(Filed: May 8, 2023)

Thomas A. Dreyer
30 Running Brook Road
Glen Mills, PA 19342
          *Counsel for Appellant*

Katie Bagley
Hannah Cook
Samuel R. Lyons
Joseph B. Syverson
United States Department of Justice
Tax Division
P.O. Box 972
Washington, DC 20044
         *Counsel for Appellee*

_____

## OPINION OF THE COURT

_____

KRAUSE, *Circuit Judge*.

When it comes to punishing fraud crimes under the United States Sentencing Guidelines, it is typically the case that the greater the monetary loss is, the harsher the penalty. But what is the rule if the loss is merely intended, not actual? We recently answered this question for theft offenses in *United States v. Banks*, holding that in the absence of Guideline text extending "loss" to intended loss, U.S.S.G. § 2B1.1's loss table was properly interpreted to reach only actual loss. 55 F.4th 246, 258 (3d Cir. 2022).

From this precedent, Appellant Albert William Upshur urges that we likewise limit the tax loss table at U.S.S.G. § 2T4.1 to actual loss, which would require his resentencing at a lower offense level. But the texts of U.S.S.G. §§ 2T1.1 and 2T1.4, which prescribe the Guidelines calculation for tax fraud, make plain that § 2T4.1's loss table covers not only the actual loss to the United States Treasury, but also the loss the perpetrator intended. Thus, the District Court relied on the

2

proper base offense level, and we will affirm the sentence it imposed.

### I.   BACKGROUND

Upshur and co-defendant Yolanda Thompson were indicted in 2018 for engaging in two fraudulent tax schemes over the course of a decade.

In one, they operated a trust and told people that they could pay off their debts if they wired certain fees to Upshur and allowed the defendants to file tax forms representing that the Trust had withheld significant amounts of income tax on their behalf, hopefully yielding sizable refunds. This scheme required participants to pay $500 to join and $250 for each debt they wanted to pay off, as well as 20% of any payout they received from the IRS. Upshur and Thompson participated in it themselves as well. Though this scheme was largely unsuccessful, the IRS did issue one participant a $1.5 million refund in 2011. Even then, the IRS realized its mistake and was able to freeze the payment.

In a second scheme, they made large fraudulent tax overpayments to the IRS, hoping to generate refunds. This scheme apparently did not generate any payments from the IRS, but together with the first scheme, Upshur's and Thompson's conspiracy resulted in over $325 million in fraudulent tax claims.

Proceeding *pro se*, Upshur waived his right to a jury trial and was convicted at a bench trial of conspiracy to defraud the United States and eight counts of aiding and assisting in the preparation of false tax returns, in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7206(2), respectively. When it came to sentencing Upshur, the District Court recognized there was no actual loss to the United States Treasury, and calculated Upshur's base offense level under U.S.S.G. § 2T1.4, the Guideline for aiding and assisting tax fraud, using the intended-loss figure of $325 million. Applying the tax loss table at U.S.S.G. § 2T4.1, that loss figure produced a base offense level of thirty-four, which, with a two-point upward adjustment for obstruction under U.S.S.G. § 3C1.1 and Upshur's Criminal History Category of VI, resulted in a

3

Guidelines range of 324 to 348 months' imprisonment. The Court, however, imposed a below-Guidelines sentence of eighty-four months.

Upshur filed a notice of appeal, but originally did not file an appellate brief. Instead, his standby counsel moved to withdraw, pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Third Circuit L.A.R. 109.2(a). After we published our opinion in *Banks*, however, Upshur's counsel diligently identified a non-frivolous issue it offered for appeal and sent a letter to the Court pursuant to Federal Rule of Appellate Procedure 28(j), arguing that *Banks* required reversal of his client's sentence. We treated that letter as a motion to withdraw his *Anders* brief, which we granted, and merits briefing ensued.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

We review a district court's interpretation of the Sentencing Guidelines de novo. *United States v. Seibert*, 971 F.3d 396, 399 (3d Cir. 2020) (citation omitted). But where a defendant fails to preserve the issue in the district court, we review only for plain error. *United States v. Scarfo*, 41 F.4th 136, 192 (3d Cir. 2022) (citation omitted). We review a district court's factual findings for clear error. *Seibert*, 971 F.3d at 399 (citation omitted).

## III. DISCUSSION

Upshur's argument on appeal is that the "spirit" of our intervening decision in *Banks* requires resentencing because the District Court erred in relying on intended loss in calculating his base offense level. Opening Br. at 19. Below, we first summarize our decision in *Banks* and the reasons we concluded that the theft loss table at § 2B1.1 was limited to actual loss. We then consider the implications of *Banks* for the tax loss table at § 2T4.1.

4

### A.    *Banks* and the Theft Loss Table

*Banks* involved the sentencing enhancement table for theft offenses at § 2B1.1.  The defendant had attempted to make hundreds of thousands of dollars' worth of fraudulent deposits into and withdrawals from an international exchange system, but he was unsuccessful.  *Banks*, 55 F.4th at 251.  The district court, in reliance on the application notes to § 2B1.1, concluded that the table covered both a scheme's "actual loss" and its "intended loss," and therefore applied a 12-point enhancement based on the amount of money Banks had attempted to withdraw from the exchange.  *Id.* at 253.

In view of *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), we reversed, holding that the application notes were not entitled to the deference the district court accorded them and that the plain text of § 2B1.1 controlled.  *See Banks*, 55 F.4th at 255–57.  Because the "ordinary meaning of 'loss' in the context of § 2B1.1 is 'actual loss,'" we remanded for resentencing.  *Id.* at 257–58; *see also United States v. Kousisis*, Nos. 19-3679 and 19-3774, Slip Op. at 22 & n.97 (3d Cir. Apr. 21, 2023) (applying *Banks* to the § 2B1.1 loss calculation in the context of benefits-program fraud).

### B.    The Application of *Banks* to Upshur's Case

Because Upshur did not argue a similar interpretation of § 2T4.1 in the District Court, we review that argument on appeal only for plain error.  *See* Fed. R. Crim. P. 52(b).  Thus, Upshur can only prevail if (1) there was an error, (2) which was plain, and (3) affected his substantial rights.  *United States v. Johnson*, 899 F.3d 191, 200 (3d Cir. 2018) (citation omitted).  In making these assessments, we consider the implication of *Banks* because plain error means error under controlling law at the time of direct appeal.  *Id.* at 199–200.

Despite the superficial similarities between the loss tables at § 2B1.1 and § 2T4.1, Upshur's argument founders at the first step of the plain error test because the District Court did not err at all.  Unlike § 2B1.1, § 2T1.4—and § 2T1.1, to which § 2T1.4 refers for its definition of "tax loss"—encompass both actual and intended monetary losses.  In *Banks*, our reasoning was that the text of § 2B1.1 did not

differentiate between actual and intended monetary loss, and, in the absence of a specialized definition, "loss" must carry its "ordinary meaning" of "actual loss." 55 F.4th at 257–58. But § 2T1.1, in contrast, provides a detailed, capacious definition of "tax loss": In the context of tax crimes, "loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(c)(1). That definition by its terms encompasses both actual and intended losses from tax fraud schemes, and § 2T1.4 expressly applies that definition to "the tax loss . . . resulting from the defendant's aid, assistance, procurance or advice." *Id.* § 2T1.4(a).

Upshur attempts to circumvent this clear textual directive by arguing that he and Banks were similarly situated in that they both "planned and executed a scheme to steal money." Opening Br. at 10. In the broadest sense, that may be true, but Upshur's crimes of conviction are governed by a different Sentencing Guideline than Banks's, and, in contrast to § 2B1.1, which covered Banks's offense, § 2T1.4 uses a definition of "loss" that unambiguously includes both actual and intended losses.[1]

In sum, the District Court did not err in relying on Upshur's $325 million in intended losses to calculate his base offense level, and resentencing is not required.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[1] Because we conclude that the text of § 2T1.1(c)(1) is unambiguous, we need not go further and examine its "structure, history, and purpose" or determine if the relevant Guidelines Commentary merits *Auer* deference. *See Kisor*, 139 S. Ct. at 2415.