**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3093
_____

UNITED STATES OF AMERICA

v.

LYNELL GUYTON,
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-17-cr-00215-001)
District Judge: Honorable David S. Cercone
_____

Argued on June 3, 2025

Before: HARDIMAN, BIBAS, and FISHER, *Circuit Judges*.

(Filed: July 18, 2025)

Abigail E. Horn [Argued]
Federal Community Defender Office for the Eastern District of
Pennsylvania
The Curtis Center, Suite 540 West

601 Walnut Street
Philadelphia, PA 19106

*Counsel for Appellant*

Adam N. Hallowell [Argued]
Laura S. Irwin
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

A jury convicted Lynell Guyton of nine drug-trafficking, firearm, and money-laundering offenses. Guyton appeals his judgment of conviction and sentence, citing a host of errors. Most of the arguments he now raises were unpreserved, and some raise questions of first impression. For the reasons that follow, we will affirm the judgment in all respects except one: we will vacate a firearms charge and remand for the District Court to enter a judgment of acquittal on that count.

I

A

Before this federal prosecution, Guyton had many run-ins with the state criminal justice system. Because those state crimes are relevant to Guyton's federal sentence in this case, we recount them in detail.

In March 2009, Pittsburgh Police conducted a controlled purchase of drugs from Guyton but did not arrest him then. On April 8, 2009, Guyton was detained on unrelated charges. Seven months later, while still in custody, Guyton was charged under Pennsylvania law with possession with intent to deliver a controlled substance for the March 2009 transaction. *See* 35 P.S. § 780-113(a)(30). Guyton posted bond for that charge the same day but remained imprisoned on the unrelated offenses. On December 10, 2009, he pleaded guilty to the unrelated charges and was sentenced to the time he served from April 8 to December 10. Guyton was released on bond for the March 2009 offense on December 20, 2009.

Nearly two years later, Guyton was convicted of the March 2009 offense and sentenced to 18 to 36 months' imprisonment followed by three years' probation. The sentencing court credited Guyton with 256 days—the time he was imprisoned from April 8, 2009, to December 20, 2009. His sentence was later reduced to one year, one month, and fifteen days under Pennsylvania's recidivism risk reduction incentive. Guyton was released on July 22, 2012, 220 days after he was sentenced.

B

Five years after he was released from state prison, Guyton engaged in conduct that caught the attention of federal law enforcement: he used Skype to order large quantities of fentanyl analogues from China. In one exchange, Guyton asked the Chinese suppliers for "fentanyl products," and they promised him "a good product of opioids" with a "very strong" effect. Supp. App. 14. Guyton repeatedly asked his suppliers how they "camouflage[d]" the drugs, expressing concern that United States "Customs [has] been very strict lately." Supp. App. 13, 25–26. One supplier sent Guyton "MoneyGram Payment Details" so he could pay for the drugs. Supp. App. 12. MoneyGram records showed that Guyton sent multiple wire transfers to China.

Meanwhile, U.S. Customs and Border Protection intercepted a suspicious package sent from Hong Kong that was addressed to "Avon Barksdale" in Pittsburgh. App. 152–53. The package contained about 100 grams of methoxyacetyl and cyclopropyl fentanyl. Law enforcement replaced the drugs with sham substances and delivered the package as addressed. Minutes later, Guyton arrived on a gold hoverboard, retrieved the package, and was immediately arrested.

After he was released, Guyton continued to deal drugs. He was found in possession of cyclopropyl fentanyl during two different traffic stops. And he continued to mix and package drugs in his neighborhood, sometimes using the homes of Anthony Lozito and James Defide.

As the federal investigation progressed, law enforcement conducted trash pulls at several houses. They found drug paraphernalia in Lozito's and Defide's trash and

4

two firearms in Guyton's trash. Authorities then executed search warrants at each house. At Guyton's, they found drug paraphernalia, a ballistic vest, and a receipt for ammunition. Law enforcement also searched an apparently abandoned house next door to Guyton's residence. Inside that house, they recovered two firearms in a duffel bag. At Lozito's house, law enforcement found Guyton along with cyclopropyl fentanyl and other drug paraphernalia.

C

A federal grand jury indicted Guyton on nine charges: conspiracy to distribute 100 grams or more of a fentanyl analogue in violation of 21 U.S.C. §§ 841(b)(1)(A)(vi) and 846 (Count 1); possession with intent to distribute 100 grams or more of a mixture containing a fentanyl analogue in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi) (Count 2); possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Counts 3 and 4); possession with intent to distribute a mixture containing a fentanyl analogue in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 5 and 6); attempt to distribute ten or more grams of a mixture containing a fentanyl analogue in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi) (Count 7); and international money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) (Counts 8 and 9).

The Government filed an information under 21 U.S.C. § 851(a) alleging that Guyton's 2011 conviction triggered the recidivist sentencing enhancements of § 841(b). Those charges were included in the superseding indictment. And the grand jury found that, as to Counts 1, 2, and 7, Guyton was convicted in 2011 for possession with intent to deliver, delivery, or manufacture a controlled substance in violation of

Pennsylvania law. It further found that he "served a term of imprisonment of more than twelve months" for the 2011 conviction and was released "within fifteen years of the commencement of" the offenses charged in Counts 1, 2, and 7. App. 49.

At trial, the prosecutor opened by telling the jury that Defide would testify that Guyton used the derelict house next door as a "mix spot." App. 145. But on the witness stand, Defide did not deliver as promised: he said that he and Guyton never discussed the house. And though Defide identified the firearms from the trash bag outside Guyton's home, he did not offer any testimony about the ones recovered from the derelict house.

The Government also introduced into evidence MoneyGram documents. A spreadsheet showed wire transfers from "Guyton" to several recipients in different cities, including "Beijing" and "Wuhanshi." App. 668, 672. It also contained columns labeled, among other things, "Snd Status," "Rcv Date," and "Rcv Time." App. 667, 671. Specific dates and times were listed under the "Rcv Date" and "Rcv Time" columns. A special agent with Homeland Security Investigations described the MoneyGram spreadsheet to the jury, explaining that Guyton sent $500 to Junyang Lu in Beijing, China, and $450 to Piao Cheng in Wuhanshi, China.

At the close of evidence, Guyton moved for a judgment of acquittal, which the District Court denied. [1] The District Court then instructed the jury. On the knowledge requirement

_____

[1] Guyton elected to proceed pro se. Midway through trial, he asked standby counsel to take over his representation, which counsel did for the rest of the proceedings.

for the drug possession and distribution counts (Counts 1, 2, 5, 6, and 7), the District Court issued the following instruction:

> Knowingly does not require that the Defendant knew that the acts charged and surrounding facts amounted to a crime . . .
>
> The phrase "knowingly or intentionally," as used in the offense charged, requires the Government to prove beyond a reasonable doubt that Mr. Guyton knew that what he possessed with the intent to distribute was a controlled substance or was an analogue of a controlled substance, that is, that the Defendant knew either the legal status of the substance, or the chemical structure and physiological effects of that substance.

App. 597. In addition, the District Court instructed the jury on the elements of *domestic* money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), even though Counts 8 and 9 of the indictment had charged *international* money laundering under 18 U.S.C. § 1956(a)(2)(A).

The jury returned a guilty verdict on all counts. The jury was not asked to find any facts relating to Guyton's 2011 convictions.

D

Based on the § 851 information, the Presentence Investigation Report (PSR) concluded, in relevant part, that the recidivist enhancements in 21 U.S.C. § 841(b)(1)(A) and (B) applied to Counts 1, 2, and 7. Those enhancements increased the mandatory minimum term of imprisonment from 10 to 15 years on Counts 1 and 2. *See* 21 U.S.C. § 841(b)(1)(A). And on Count 7, the mandatory minimum term of imprisonment increased from 5 to 10 years, and the statutory maximum increased from 40 years' to life imprisonment. 21 U.S.C. § 841(b)(1)(B). Guyton did not object to the PSR.

At sentencing, the District Court adopted the PSR's findings. The Court imposed a sentence of 360 months' imprisonment on Counts 1 and 2 and a concurrent 120-month sentence on the remaining counts, followed by 10 years' supervised release.

Guyton timely appealed.

II[2]

We begin with Guyton's argument that the District Court erred in denying his motion for judgment of acquittal on Count 3, one of the two felon-in-possession-of-firearms charges. *See* 18 U.S.C. § 922(g)(1). He contends that there is insufficient evidence to support his conviction for the two guns found in the derelict house. Guyton concedes he was near the

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

8

house (because he lived next door) and had access to it (because the back door was open). But he maintains that there was no evidence that he exercised dominion or control over the house or otherwise knew of the firearms. So he says no reasonable juror could have convicted him of constructively possessing those firearms. We agree.

To prove constructive possession, the Government was required to demonstrate that Guyton knew about the guns and exercised dominion and control over the area where they were found.[3] *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir. 1996). Viewing the evidence in the light most favorable to the Government, a reasonable jury could not find that Guyton constructively possessed the firearms stored in the derelict house. *See United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001). No witness testified to that effect: when asked if Guyton owned any firearms, Defide identified only the ones found in Guyton's trash. And there is no forensic evidence tying Guyton to the guns in the house next door: the Government tested the firearms for fingerprints and DNA but found none. While law enforcement did seize a bulletproof vest and a receipt for ammunition from Guyton's house, no evidence connected those items to the firearms in the derelict house.

Nor was there evidence that Guyton was ever present at the derelict house, much less that he exercised dominion or control over it. *See Jenkins*, 90 F.3d at 818 (noting that "mere

---

[3] The Government suggests that the jury could have found actual possession. But the Government offered no proof that Guyton "exercised direct physical control over the weapon[s]." *United States v. Caldwell*, 760 F.3d 267, 278 (3d Cir. 2014). So the Government was limited to a constructive possession theory.

9

presence on the property" where the contraband is located is insufficient to show dominion or control (citation omitted)). Guyton did not own, rent, or live in the house. He did not possess a key or keep personal belongings in the house. And despite the Government's promises during its opening statement, Defide did not testify that Guyton used the house as a "mix spot." App. 145. To the contrary, Defide testified that he and Guyton never discussed the house. In short, the "decisive nexus of dominion and control between the defendant and the contraband" is absent here. *Jenkins*, 90 F.3d at 820.

The Government concedes that Defide "did not connect Guyton to the abandoned house or the firearms inside." Gov't Br. 29. But it contends that Guyton's proximity plus his motive to conceal contraband was enough to show dominion or control. We disagree.

The Government relies on our decision in *United States v. Foster*, 891 F.3d 93 (3d Cir. 2018), but that case is distinguishable. There, one of the defendants had been seen several times in the driver's seat of a stolen car involved in an armed robbery. *Id.* at 111–12. Shortly after the defendant exited the vehicle, law enforcement recovered a firearm from the back seat. *Id.* at 100–02. We held that the defendant's proximity to the firearm, along with his motive to possess the gun for armed robbery, evasive conduct, and presence in the driver's seat supported the constructive possession conviction. *Id.* at 112.

Unlike *Foster*, this record contains no evidence that Guyton was present where the contraband was found. No one testified about seeing him at or in the derelict house, and he did

10

not own or rent it.[4] While *Foster* does indicate that a defendant's attempts to hide or destroy contraband may establish dominion and control, there is no such evidence here. The record shows only that Guyton tried to hide *other* contraband: the firearms in the trash in front of his house and the drug paraphernalia at his associates' homes. It does not follow from that conduct that any firearms found in the neighborhood can be attributed to Guyton. Nor does his general motive to evade authorities, without more, permit such an inference. That is especially true here, where there were nearly a dozen other defendants involved in this drug-trafficking conspiracy and the drug operations involved many houses in the same neighborhood.

On this record, a reasonable jury could not infer that Guyton constructively possessed the two firearms found in the derelict house. So we will vacate Guyton's conviction on Count 3 and remand for the District Court to enter a judgment of acquittal on that count.

---

[4] For that same reason, the other cases the Government cites are inapt. In *United States v. Benjamin*, the firearm was found in the defendant's basement, and the evidence showed that the defendant had previously used that firearm. 711 F.3d 371, 377 (3d Cir. 2013). Similarly, in *United States v. Walker*, the firearm was found on the floorboard of the car the defendant was driving. 545 F.3d 1081, 1088 (D.C. Cir. 2008). And the record in *United States v. Ingram* showed the defendant's dominion and control over a handgun found below an apartment window: he had been spotted throwing drugs over the apartment's balcony, there was a handgun case and manual inside the apartment, and the window screen of the apartment was ajar. 207 F. App'x. 147, 150, 154–55 (3d Cir. 2006).

III

Guyton also argues that the District Court erroneously charged the jury on the mens rea element of his drug-trafficking charges. He contends that the instructions did not follow *McFadden v. United States*, which sets forth the requirements for proving knowledge of Analogue Act violations.[5] 576 U.S. 186 (2015). We agree. But because Guyton never objected to these instructions as required by Fed. R. Crim. P. 52(b), plain error applies. We will reverse only if (1) there was an "error"; (2) the error was "plain"; (3) the error prejudiced or "affect[ed] substantial rights"; and (4) not correcting the error would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (citation modified). As we shall explain, Guyton cannot satisfy prong three.

A

To convict Guyton under 21 U.S.C. § 841, the Government had to prove knowledge. *McFadden*, 576 U.S. at 194. Because Guyton was charged with distributing and possessing analogue substances, the Government could prove its case by showing: (1) that Guyton knew the substance was "actually listed on the federal drug schedules or treated as such by operation of the Analogue Act" or (2) that he knew of "features" that made it an analogue, such as chemical structure

---

[5] The Controlled Substance Analogue Enforcement Act of 1986 "identifies a category of substances substantially similar to those listed on the federal controlled substance schedules" and "instructs courts to treat those analogues" as schedule I controlled substances if they are intended for human consumption. *McFadden*, 576 U.S. at 188.

or physiological effects that are "substantially similar" to those of a controlled substance. *Id.* The District Court's instructions were mistaken with respect to both options.

1

The District Court's instruction on the first *McFadden* option contained two errors. The Court instructed the jury that Guyton need not know the acts charged "amounted to a crime." App. 597. That was incorrect because *McFadden*'s first option requires proof that the defendant knew he was violating some federal law. *See* 576 U.S. at 195 n.3. The Government insists that the District Court's "amounted to a crime" language referred only to *McFadden*'s second option, but that reading of the record is untenable. The District Court gave that charge before giving both *McFadden* instructions. It did not restrict the charge to the second *McFadden* option, so it applied equally to the first.

The District Court also erred by instructing the jury that it could find knowledge if Guyton knew the "legal status of the substance." App. 597. That is because *McFadden* requires that the defendant know that the analogue substance is controlled under a *federal* law, not just "some law." 576 U.S. at 195. The Government rejoins that "in the context of the overall charge," the instructions clearly referred to federal law. Gov't Br. 18 (citation omitted). It argues that the phrase "legal status" referred back to "the status of being a 'controlled substance' and 'analogue,' which are terms of federal law." Gov't Br. 17 (citations omitted). So, the Government suggests, the jury understood that the mens rea element required Guyton to know the analogue's status under federal drug laws. That argument is unpersuasive.

"Controlled substance" and "analogue" are not exclusively federal statutory terms. *See, e.g.*, 35 P.S. §§ 780-102, 780-104 (scheduling "controlled substances" and "analogues," respectively). Indeed, just before the charge at issue, the District Court defined "controlled substance" for the jury as "some kind of a prohibited drug," without reference to federal law. App. 596. That ambiguity was exacerbated by the various references to Pennsylvania's controlled substance laws throughout trial. So it is far from clear that "legal status" referred exclusively to federal drug laws, as required by *McFadden*.[6]

2

The District Court's instruction on *McFadden*'s second option was also erroneous. The Court correctly instructed the jury that it could find knowledge if Guyton knew "the chemical structure and physiological effects of that substance." App. 597. But that instruction was incomplete because *McFadden* requires a comparison: that the defendant knew the analogue substance had a chemical structure or a physiological effect

---

[6] The Government advances two additional arguments. First, it says that the District Court "never suggested that Guyton could be convicted based on his knowledge of state law." Gov't Br. 17. But the lack of explicit reference to state law does not amount to an affirmative reference to federal law, which *McFadden* requires. Second, the Government emphasizes that the District Court's abridged instruction mirrored language in the Fourth Circuit's *McFadden* opinion on remand from the Supreme Court. But elsewhere in the opinion, the Fourth Circuit described the correct legal standard in full. *See United States v. McFadden*, 823 F.3d 217, 223–28 (4th Cir. 2016).

14

substantially similar to that of a controlled substance. 576 U.S. at 194.

The Government again argues that, when reviewed in context, this instruction was proper. Earlier in its instructions, the District Court had defined a fentanyl analogue as having a "chemical structure which is substantially similar to the chemical structure of fentanyl," and "a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" that of fentanyl. App. 596. The Government argues that this definition was "permissibly incorporated" into the later charge on the knowledge element. Gov't Br. 19. Once again, we are not persuaded.

The District Court defined "analogue of fentanyl" while instructing the jury on the object of the underlying offense, a distinct element from mens rea. App. 596. And the District Court did not cross reference that definition when it gave the subsequent mens rea instruction. On this record, it is not apparent that the earlier definition was incorporated into the later charge, and we will not assume that the jury drew such an inference.

\* \* \*

The upshot is that the District Court erred in instructing the jury on the mens rea requirement on Counts 1, 2, 5, 6, and 7. And the error was plain because it was "clear" under *McFadden*. *United States v. Adams*, 252 F.3d 276, 286 (3d Cir. 2001) (citation modified).

B

At *Olano*'s third prong, Guyton must show prejudice: "a reasonable probability" that "the outcome of the proceeding would have been different" with properly worded instructions. *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (citation modified). Guyton cannot make that showing here because there is overwhelming evidence that he knew he was trafficking federally controlled substances, which satisfies *McFadden*'s first option.

Guyton knew his drugs were "subject to seizure at customs." *McFadden*, 576 U.S. at 192 n.1. He told Chinese suppliers to "camouflage" his opioid shipments "to pass U.S. customs," which he noted had "been very strict lately." Supp. App. 25–26. And in an inculpatory homage to the drug-trafficking kingpin of the acclaimed television series *The Wire*, Guyton instructed that the shipment be mailed to "Avon Barksdale." Supp. App. 16–17. These efforts to dodge Customs, along with the "concealment of his activities" and other "evasive behavior," provided compelling evidence that Guyton knew the drugs in the intercepted shipment—the basis for Count 7—were federally controlled. *McFadden*, 576 U.S. at 192 n.1.[7]

Because the evidence shows that Guyton had the requisite knowledge under § 841(b), he has not established that

---

[7] That evidence also supports Guyton's other drug-related convictions (Counts 1, 2, 5, and 6) because he trafficked the same substance found in the intercepted shipment—cyclopropyl fentanyl. So he continued to know that his substances were subject to seizure by Customs, and thus controlled under federal law.

16

the District Court's instructional errors affected his substantial rights. So we find no reversible error on this point.

IV

Guyton argues that the District Court constructively amended Counts 8 and 9 of the indictment. Those counts charged him with international money laundering under 18 U.S.C. § 1956(a)(2)(A), alleging that he "transmit[ed] and transfer[ed] funds from a place in the United States to a place outside the United States" to promote drug trafficking. App. 47–48. But when instructing the jury, the District Court charged *domestic* money laundering under 18 U.S.C. § 1956(a)(1)(A)(i). The Court instructed the jury to decide whether "Guyton conducted, or attempted to conduct, a financial transaction, which affected interstate commerce," with criminal proceeds to promote drug trafficking. App. 610. Guyton contends that this instruction amounted to a constructive amendment because it permitted the jury to convict him of an offense different from the one charged in the indictment. *See United States v. Daraio*, 445 F.3d 254, 259–60 (3d Cir. 2006) (explaining that a constructive amendment occurs when evidence, arguments, or jury instructions "modify essential terms of the charged offense" so that "there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from" what the indictment "actually charged").

Relying on *United States v. Carey*, Guyton contends that his motion for judgment of acquittal—which did not mention a constructive amendment—preserved his argument. 72 F.4th 521 (3d Cir. 2023). We disagree because *Carey* held that "attacking the sufficiency of the evidence" in a Rule 29 motion preserved a challenge to an improper variance, not a

17

constructive amendment. *Id.* at 529 & n.9 (explaining that an improper variance occurs when the trial evidence materially differs from the facts alleged in the indictment); *see* Fed. R. Crim. P. 29. Constructive amendments and variances are distinct arguments that stem from different constitutional provisions. *United States v. Vosburgh*, 602 F.3d 512, 532 n.20 (3d Cir. 2010). In other contexts, Rule 29 motions have been held not to preserve new arguments on appeal. *See, e.g.*, *United States v. Syme*, 276 F.3d 131, 143 n.4 (3d Cir. 2002) (holding that a new argument about the sufficiency of the evidence was unpreserved). Guyton does not provide any good reason to depart from that rule, so we will review for plain error. *See* Fed. R. Crim. P. 52(b). And we need not decide whether the District Court constructively amended the indictment, whether it did so plainly, or whether any error prejudiced Guyton. That is because even if *Olano*'s first three prongs are all met, its fourth prong is not.

At *Olano*'s fourth prong, we may decline to exercise our discretion to reverse constructive-amendment errors "if (1) the charged and uncharged crimes were closely linked and (2) the evidence of guilt on the closely linked but uncharged crime is overwhelming and essentially uncontroverted." *United States v. Greenspan*, 923 F.3d 138, 153 (3d Cir. 2019) (citation modified). Both factors are satisfied here.

First, the two acts of money laundering penalized in each subsection are closely linked. The indictment charged that Guyton "knowingly transmit[ted] and transfer[red] funds from a place in the United States to a place outside the United States" with intent to promote drug trafficking. App. 47–48; *see* 18 U.S.C. § 1956(a)(2)(A). The unindicted act in the jury instructions charged "conduct[ing]"—such as "initiating, concluding, or participating" in—a "financial transaction" with

18

the intent "to promote the carrying on of illegal drug trafficking." App. 611; *see* 18 U.S.C. § 1956(a)(1)(A)(i), (c)(4). As is apparent from the text of the two subsections, the differences between them are "slight." *United States v. Carr*, 25 F.3d 1194, 1204 (3d Cir. 1994). Their objects—the promotion of drug trafficking—are the same. *Compare* 18 U.S.C. § 1956(a)(1)(A)(i), *with id.* § 1956(a)(2)(A). And the prohibited acts—transmittal/transferal and conducting—are "so closely linked here that we are convinced that the fairness, integrity or public reputation of judicial proceedings is not implicated." *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1252 (10th Cir. 2004) (citation modified).

Second, evidence of the unindicted crime—that Guyton "conducted" a "financial transaction" to promote drug trafficking—is "essentially uncontroverted." *Greenspan*, 923 F.3d at 153. In Skype messages to foreign suppliers, Guyton requested "fentanyl products" and was told that he would receive "a good product of opioids." Supp. App. 14. He repeatedly asked suppliers how they "camouflage[d]" the drugs to evade Customs, expressing concern that U.S. "Customs [has] been very strict lately." Supp. App. 12–13, 26. One supplier sent Guyton "MoneyGram Payment Details" so he could pay for the drugs. Supp. App. 12. MoneyGram records reflect those payments, indicating that multiple monetary transfers made in Guyton's name were sent to recipients in China. Columns in the MoneyGram spreadsheet entitled "Rcv Date" and "Rcv Time" list dates and times next to those transfers, indicating that the transactions were completed. App. 671.

Taken together, this evidence shows that Guyton both "initiat[ed]" and "conduct[ed]" monetary transfers to foreign recipients in exchange for synthetic opioids. App. 611; *see* 18

19

U.S.C. § 1956(c)(4). Because the unindicted conduct is closely linked to the indicted conduct, and the evidence of the unindicted conduct was overwhelming and essentially uncontroverted, the trial's fairness, integrity, or public reputation would not be affected by letting the alleged error stand. *See Greenspan*, 923 F.3d at 153–54. So the error does not warrant reversal.

V

Guyton also claims, for the first time on appeal, that the District Court erred by imposing recidivist enhancements to three of his drug convictions (Counts 1, 2, and 7) under 21 U.S.C. § 841(b)(1)(A) and (B). The Government filed an information under 21 U.S.C. § 851(a), alleging that Guyton's 2011 conviction under 35 P.S. § 780-113(a)(30) triggered the recidivist sentencing provisions of § 841(b). But the District Court failed to give him a hearing as required by 21 U.S.C. § 851(b). Guyton says this constitutes reversible error.

A

To begin, we must decide a question of first impression for this Court: "whether plain error review should apply if the defendant fails to object to § 851[b] deficiencies." *United States v. Isaac*, 655 F.3d 148, 156 (3d Cir. 2011). Ordinarily, unpreserved errors are reviewed for plain error. Fed. R. Crim. P. 52(b). *See Olano*, 507 U.S. at 731. But Guyton, relying on a decision of another court, argues that we should depart from that rule and apply de novo review. *See United States v.*

*Baugham*, 613 F.3d 291, 296 (D.C. Cir. 2010) (per curiam). We disagree.

In *Baugham*, the D.C. Circuit held that harmless error review applied to an unpreserved challenge to a district court's failure to colloquy a defendant under § 851(b). *Id.* at 295–96. In reaching that conclusion, the *Baugham* Court appealed to the purpose of § 851(b): "to place the procedural onus on the district court to ensure defendants are fully aware of their rights." *Id.* at 296. It reasoned that penalizing the defendant for the district court's oversight would "pervert the statute." *Id. But see id.* at 297 (Brown, J., concurring in the judgment) (arguing that plain-error review should apply).

The Ninth Circuit—the only other appellate court to consider the standard of review for unpreserved § 851(b) objections—went the other way and applied plain error review. *See United States v. Severino*, 316 F.3d 939, 947 & n.7 (9th Cir. 2003) (en banc). *Severino* acknowledged that it was "a bit strange to require that a defendant object to the district court's failure to give him an admonition" under § 851(b). *Id.* at 947 n.7. But the Ninth Circuit "fe[lt] bound by" a Supreme Court decision applying plain error review to defective plea colloquies under Rule 11 of the Federal Rules of Criminal Procedure. *Id.* (citing *United States v. Vonn*, 535 U.S. 55, 73 (2002)).

The Ninth Circuit's approach tracks with decisions of our sister courts that have addressed the standard of review for unpreserved objections to § 851(a) errors. *See, e.g.*, *United States v. Lewis*, 597 F.3d 1345, 1346–47 (7th Cir. 2010) (applying plain-error review where the Government failed to file an information under § 851(a)); *United States v. Beasley*,

495 F.3d 142, 145–46 (4th Cir. 2007) (same); *United States v. Dodson*, 288 F.3d 153, 159–161 (5th Cir. 2002) (same).

We now join the Ninth Circuit and hold that plain-error review applies to unpreserved objections to § 851(b) deficiencies. In doing so, we adhere to the "bright line between harmless-error and plain-error review based on preservation." *Greer v. United States*, 593 U.S. 503, 512 (2021). And we abide by the Supreme Court's repeated admonition against "any unwarranted expansion of Rule 52(b)" of the Federal Rules of Criminal Procedure. *Johnson v. United States*, 520 U.S. 461, 466 (1997); *see also Puckett v. United States*, 556 U.S. 129, 135–36 (2009) ("The real question . . . is not *whether* plain-error review applies when a defendant fails to preserve a claim . . . but rather what conceivable reason exists for disregarding its evident application.").

Guyton counters that applying plain-error review here would "penalize a defendant for not alerting the district court to its failure to alert him" about his rights. Guyton Br. 48 (citation omitted). But the Supreme Court has rejected this argument in a similar context, stressing "that is always the point of the plain-error rule: the value of finality requires defense counsel to be on his toes, not just the judge." *Vonn*, 535 U.S. at 73; *see also Puckett*, 556 U.S. at 139 (expressing doubt that "policy concerns can ever authorize a departure from the Federal Rules"). That logic applies with equal force here. While we recognize that the District Court's failure to colloquy Guyton is a serious matter, "the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure." *Johnson*, 520 U.S. at 466. So we decline to create an exception to the plain-error rule for unpreserved objections to § 851(b) deficiencies.

B

Applying plain-error review, we agree with Guyton that the District Court's § 851(b) error satisfies *Olano*'s first and second prongs. The Government sought enhanced penalties for Guyton's drug convictions under 21 U.S.C. § 841(b) and filed an information under 21 U.S.C. § 851(a). That triggered the requirement that the District Court

> inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and [] inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b). In disregarding this straightforward command, the District Court plainly erred.

C

Guyton's claim falters at *Olano*'s third step, however. He must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez*, 578 U.S. at 194 (citation modified). Guyton argues that he has met that burden: the enhanced penalties that the District Court imposed do not apply, and but for those enhancements, his sentence would have been less severe. We are not persuaded.

1

Under 21 U.S.C. § 841(b)(1)(B), the government may seek enhanced penalties if the defendant has a prior conviction

23

for a "serious drug felony" as defined in 21 U.S.C. § 802(58). That statute, in turn, provides that a "serious drug felony" is an offense described in 18 U.S.C. § 924(e)(2) "for which (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." *Id.* § 802(58).

The Government's § 851 information alleged that Guyton's 2011 conviction qualified as a serious drug felony. Recall the background of the predicate offense. In March 2009, Guyton committed drug-related offenses but was not immediately arrested. On April 8, 2009, he was detained for charges pertaining to an unrelated case. Seven months later, while still in custody for the unrelated case, Guyton was charged with the predicate offense. He posted bond the same day but remained in jail on the unrelated case. Guyton pleaded guilty to the charges in the unrelated case on December 10 and was sentenced to time served: the pretrial detention he had served from April 8 to December 10. He remained imprisoned until December 20, 2009.

In 2011, Guyton was convicted of the predicate state offense. He was sentenced to 18 to 36 months' imprisonment on that offense on December 15, 2011. But under Pennsylvania's recidivism risk reduction incentive, that sentence was reduced to one year, one month, and fifteen days. As part of that sentence, the state court credited Guyton with the 256 days he was imprisoned from April 9 to December 20, 2009, even though most of that time had been previously credited to the unrelated conviction. Because of that leniency,

24

Guyton was released on July 22, 2012, after serving only 220 days from the day he was sentenced.[8]

Guyton argues that his 2011 conviction does not qualify as a "serious drug felony" because he did not serve "a term of imprisonment of more than 12 months." 21 U.S.C. § 802(58). Even if pretrial detention counts toward a "term of imprisonment," Guyton reasons, it should not count here because most of the pretrial detention was served on an unrelated offense. Without those 256 days, Guyton argues, he served only 220 days, a term of imprisonment less than 12 months.

2

To resolve this convoluted issue, we must decide another question of first impression: whether "term of imprisonment" in § 802(58) includes time served in pretrial detention later credited to the sentence. We hold that it does.

Start with the text of § 802(58). The statute does not define "term of imprisonment." We generally presume that

---

[8] On appeal, Guyton has submitted state prison records that (1) confirm that his recidivism risk reduction incentive minimum sentence for his 2011 conviction was one year, one month, and fifteen days and (2) demonstrate that he was released on July 22, 2012. Although these records were not before the District Court, we take notice of them. *See In re Indian Palms Assoc.*, 61 F.3d 197, 205–06 (3d Cir. 1995) ("Judicial notice may be taken at any stage of the proceeding, including on appeal, as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." (citation modified)).

25

terms used in statutes carry the same meaning that they have in ordinary usage at the time Congress adopted them. *See Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021). And at the time Congress created the category "serious drug felony," "imprisonment" meant "[t]he act of confining a person," "[t]he quality, state, or condition of being confined," or "[t]he period during which a person is not at liberty." Black's Law Dictionary 875 (10th ed. 2014). These definitions comfortably encompass pretrial detention.

Moreover, nothing in the statute distinguishes time served before conviction from time served after the imposition of the sentence. Had Congress intended to draw such a line, it could have used narrower language, such as "*after* a conviction" or "*following* a conviction." *See e.g.*, Bail Reform Act of 1984, Pub. L. No. 98-473, § 209(d)(4), 98 Stat. 1837, 1987 (adding Federal Rule of Criminal Procedure 46(h), allowing courts to direct forfeiture of property "*after* conviction of the offense charged" (emphasis added)). Sensibly read, "term of imprisonment" includes pretrial detention later credited to the sentence imposed.

Guyton insists that even if "term of imprisonment" includes pretrial detention, it does not do so here because the prearrest detention credited to him was for charges unrelated to the 2011 conviction. He emphasizes that the predicate offense must be the one "for which" he served more than 12 months. Reply Br. 25 (quoting 21 U.S.C. § 802(58)).

That argument does not get Guyton far. "[F]or which" refers to the "serious drug felony"—here, Guyton's drug-related conviction for the March 2009 conduct. 21 U.S.C. § 802(58)(B). And Guyton *did* serve "a term of imprisonment of more than 12 months" for that offense: the 256 days before

26

he was sentenced plus the 220 days after he was sentenced. *See Spina v. Dep't of Homeland Sec.*, 470 F.3d 116, 128 (2d Cir. 2006) (noting the "common understanding" among the 50 States, the District of Columbia, and the federal government is that "any credited pre-conviction detention effectively becomes time served on the imposed term of imprisonment"). That the sentencing court retroactively converted Guyton's prearrest detention on an unrelated charge to time served on the 2011 conviction makes no difference under § 802(58)(B). Once the sentencing order credited that time to Guyton's sentence, it became part of his "term of imprisonment." *Cf. Moreno-Cebrero v. Gonzales*, 485 F.3d 395, 398–400 (7th Cir. 2007) (pre-conviction detention credited to defendant's sentence counts toward the five-year "term of imprisonment" under 8 U.S.C. § 1182(c)).[9]

---

[9] Guyton also contends that his pretrial detention cannot constitute part of the "term of imprisonment" because most of those 256 days were credited to a previous sentence for an unrelated conviction. Because federal sentencing law prohibits this kind of double counting, he argues that "term of imprisonment" should not be read to encompass it. Guyton raised this argument for the first time in his reply brief, so it is forfeited. *United States v. James*, 955 F.3d 336, 345 n.8 (3d Cir. 2020); *see also* Fed. R. App. P. 28(a)(5). In any event, the argument is unpersuasive. "[T]erm of imprisonment" refers only to time actually "served." 21 U.S.C. § 802(58). Procedural defects like double-counting are not germane to that inquiry. And if that weren't enough, Guyton's interpretation would have the perverse effect of penalizing a recidivist who had committed only one crime more severely than a repeat offender like Guyton.

In sum: we hold that when, as in this case, a defendant is credited with time served in pretrial detention—thereby reducing the time he will have to serve on his term of imprisonment following conviction—that detention is part of the "term of imprisonment" "for which" the offender "served" under 21 U.S.C. § 802(58). As a result, Guyton served more than 12 months' imprisonment for his 2011 conviction and was subject to the "serious drug felony" enhancements in 21 U.S.C. § 841(b)(1)(A) and (B). So the District Court's failure to colloquy him under § 851(b) did not affect the outcome of the proceedings.

## VI

In the alternative, Guyton argues that the recidivist enhancements violated his Fifth and Sixth Amendment rights under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). He did not preserve these arguments, so we review them for plain error.

Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. That rule also applies to facts that increase the statutory minimum sentence for a crime. *Alleyne*, 570 U.S. at 116. Here, the indictment stated that Guyton "served a term of imprisonment of more than twelve months" for the 2011 conviction and was released "within fifteen years of the commencement of" the instant federal offenses. App. 49. Those two facts were necessary for the 2011 conviction to constitute a "serious drug felony." 21 U.S.C. § 802(58). But

28

the jury was not asked to find them. That was plain error under *Apprendi* and *Alleyne*, which the Government concedes.

But Guyton cannot satisfy *Olano*'s third prong: that this error affected the outcome of the proceeding. *See Molina-Martinez*, 578 U.S. at 194. To make that determination, we must first assess whether the *Apprendi/Alleyne* violation was a mixed trial and sentencing error or a pure sentencing error. *United States v. Johnson*, 899 F.3d 191, 198 (3d Cir. 2018). That classification informs the scope of our prejudice analysis: if the error is a pure sentencing one, we may not consider the trial record; otherwise, we may. *See id.* at 201. A trial error "occurs when the defendant is charged with, convicted of, and sentenced for a crime, but one of the elements of that crime is not submitted to the jury." *Id.* By contrast, a pure sentencing error occurs when "a defendant is charged with and convicted of one crime, but sentenced for another." *Id*.

The *Apprendi/Alleyne* violation here was a mixed "trial and sentencing" error. *Johnson*, 899 F.3d at 198 n.2. The facts increasing the mandatory minimum and maximum sentences were charged in the indictment. But the jury was not asked to find them, either in the instructions or on the verdict form. The District Court imposed a sentence based on those facts anyway. Because this was not a pure sentencing error, we may properly consider the trial record on plain-error review. *See id.* at 201. And the District Court's "failure to instruct on an element listed in the indictment is not plain error if we determine that it is clear beyond a reasonable doubt that a rational jury would have found the element in question absent the error." *Id.* at 200 (citation modified).

Applying that standard, we conclude that the *Alleyne/Apprendi* error did not prejudice Guyton. The record

shows that Guyton served more than a year for the 2011 conviction and that he was released in 2012, well within fifteen years of his 2017 offenses that gave rise to this case. *See Greer*, 593 U.S. at 511 (explaining that "an appellate court conducting plain-error review may consider the *entire* record," including PSRs). In short, there is no reasonable probability that a properly instructed jury would have failed to find the two facts necessary to trigger the recidivist enhancements. So Guyton has not shown an effect on his substantial rights to satisfy the third prong of plain-error review.[10] *See Johnson*, 899 F.3d at 200.

\*     \*     \*

Guyton's appellate counsel thoroughly examined the record below and skillfully identified many errors in the trial court. But none are reversible except the denial of Guyton's motion for judgment of acquittal on Count 3. Accordingly, we will vacate that conviction and remand for the District Court to enter a judgment of acquittal on Count 3. We will affirm the remaining eight counts and the judgment of sentence.

---

[10] Guyton also brings facial and as-applied challenges to his § 922(g) convictions (Counts 3 and 4) under the Second Amendment. As he concedes, these arguments are foreclosed by *United States v. Dorsey*, 105 F.4th 526, 532–33 (3d Cir. 2024). We acknowledge that those arguments are preserved for further review.